[No. 1085-2.    Division Two.    June 6, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. LUMAN JOHN
KEARNEY, *Appellant.*

*John M. Wolfe,* for appellant.

*Curtis Janhunen, Prosecuting Attorney,* and *David Foscue, Deputy,* for respondent.

PETRIE, J.—The defendant was convicted on four charges of molesting minor children. We deem it necessary to discuss only one of the 10 assignments of error raised by his appeal. The defendant contends the trial court erred by not granting his motion to dismiss the charges filed against him, after the court had been advised of alleged prosecutorial misconduct. The alleged misconduct consists essentially of advising several of the defendant's listed witnesses that the defendant had refused to submit to a lie detector test. We agree that under the circumstances the charges should have been dismissed.

The reaction of one of those witnesses, a psychiatrist who

had examined the defendant, speaks volumes. The psychiatrist concluded his report with the following paragraph:

> The patient was well-oriented, revealed no hallucinations or delusions, and showed no signs of gross psychiatric disturbance. From my examination of him, I was unable to determine, definitely, whether or not he had molested the girls. The fact that he will not take a lie-detector test makes me *suspect* that something went on between the patient and the girls. His account of himself suggests to me that he has a life-style of not being an altogether responsible citizen. Of course, this does not prove or disprove that he committed the acts he has been accused of doing.

The other two witnesses contacted by the deputy prosecuting attorney who tried the case were potential character witnesses for the defendant. In each case, the deputy inquired of the witnesses whether or not they were aware that the defendant had refused to take a lie detector test. In one instance, the deputy prosecutor advised the witness that the charges would have been dismissed if the defendant had submitted to the test. The deputy then "inquired as to what effect this information had on my feelings about Mr. Kearney." In the other instance, the deputy "asked me if I knew why Mr. Kearney would refuse such a test."

Both the federal and state constitutions guarantee that a person accused of a crime shall have the right to compulsory process to compel attendance of witnesses in his own behalf. Sixth amendment to the United States Constitution; tenth amendment to the Constitution of the State of Washingon. Statutory dimension to this right is provided by RCW 10.46.050 as follows:

> Every person charged with the commission of a crime shall have the right upon the trial of such charge to be heard in person or by counsel, and to produce witnesses and proofs in his favor and to have compulsory process to compel the attendance of all witnesses who may be necessary for his proper defense.

Granting to a defendant, particulary one accused of having committed a heinous crime, the right to compulsory

process, without also granting assurances that the minds of his potential character witnesses will not be unduly influenced by prosecutorial use of inadmissible, extraneous material, would rather effectively negate the original right.

It is vital, of course, for prosecuting officials to become aware of all the facts which bear upon the guilt or innocence of a party charged with having committed a crime. Accordingly, those officials may probe the mind of a listed defense witness to determine what bias or prejudice may *lie* therein. However, it is singularly inappropriate for such an official to *implant* in the mind of a potential witness a suspicion that the accused really did commit the crime as evidenced by his refusal to submit to a process which the official knew the accused could refuse with absolute impunity. *See State v. Rowe*, 77 Wn.2d 955, 468 P.2d 1000 (1970). That would be an attempt to implant a bias or prejudice where presumably none existed. We believe the prosecution's approach to all three of these potential witnesses was patently improper.

█ The State contends on appeal, however, that the statements and affidavits of the potential witnesses fall short of an outright declaration that, because of the information improperly presented to them, they can no longer testify favorably on behalf of the defendant. The thrust of the defense position is that a suspicion has been implanted into the minds of the witnesses sufficient to destroy the effective use of their testimony. The psychiatrist's report clearly indicates that his knowledge that the defendant refused to submit to a test planted a suspicion in his mind. If that suspicion has been emphatically implanted into the mind of a professional psychiatrist, it is reasonable to assume that a similar suspicion now exists in the minds of the lay witnesses. The circumstances presented herein indicate the probability of prejudice is so apparent that we do not hesitate to conclude the prosecutorial action inherently deprived the defendant of due process of law. *State v. Stiltner*, 80 Wn.2d 47, 391 P.2d 1043 (1971).

Indeed, there is no way to isolate the prejudice resulting from this prosecutorial activity. The defendant has been effectively deprived of character witnesses in a proceeding in which credibility is a most significant factor. In addition, at least a modest notoriety has undoubtedly occurred subsequent to his conviction and incarceration. There is little likelihood that upon retrial, which we would ordinarily order, the defendant could obtain the effective assistance of character witnesses. In our opinion, the totally unwarranted prosecutorial action vitiates the whole proceeding. *State v. Cory*, 62 Wn.2d 371, 382 P.2d 1019, 5 A.L.R.3d 1352 (1963).

We do not, by this opinion, imply that the deputy prosecutor unlawfully tampered with a witness, but we do firmly believe that his overly zealous action effectively denied this defendant an opportunity to present his only defense. Finally, we are compelled to repeat the oft-quoted comment from out of the past:

> It is not our purpose to condemn the zeal manifested by the prosecuting attorney in this case. We know that such officers meet with many surprises and disappointments in the discharge of their official duties. They have to deal with all that is selfish and malicious, knavish and criminal, coarse and brutal in human life. But the safeguards which the wisdom of ages has thrown around persons accused of crime cannot be disregarded, and such officers are reminded that a fearless, impartial discharge of public duty, accompanied by a spirit of fairness toward the accused, is the highest commendation they can hope for.

*State v. Montgomery*, 56 Wash. 443, 447, 105 P. 1035 (1909).

Judgment and sentence must be set aside and the charges dismissed.

PEARSON, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied July 9, 1974.

Review denied by Supreme Court October 24, 1974.