[No. 15680-2-I.   Division One.   January 20, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID BROOKS
LOUGIN, *Appellant.*

*John Christiansen* of *Washington Appellate Defender
Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Saul Gamo-
ran, Deputy,* for respondent.

SCHOLFIELD, C.J.—David Brooks Lougin appeals from a
conviction for first degree theft. We affirm.

FACTS

On May 10, 1984, at 2 p.m., Richard Egge, a West Seattle
store owner, observed a suspicious–looking car enter the
alley that runs behind his store. Egge drove around the

block and saw that the car containing two men and one woman was now parked in the alley.

Egge saw the two men enter the nearby J.C. Penney store, leave, and reenter. At one point, Egge passed within approximately 15 feet of the men and was able to observe them and their appearance. Egge then saw the men walking again. Egge continued his observation for 10 to 15 minutes, driving around the block and returning to the alley, passing the men on the street two to three times.

Leon Capelouto, owner of Shafran's clothing store, saw a man enter through the back door, grab an armload of dresses from a rack, back up out of the door, throw the dresses in a car and get in. As the man backed out of the door, Capelouto saw his face.

The car the man entered was blocked by a pickup truck at the end of the alley. The man got out of the car and tried to push the truck, but the car's driver plowed over the nearby cyclone fence, hit the truck, and drove off as the man ran around the truck and tried to catch up with the car. Capelouto and Egge pursued the car to no avail, but did report the car's license number. Egge and Capelouto later identified the man as Lougin from police photo montages.

On May 20, 1984, a Seattle police officer observed a car matching the getaway car's description. He stopped the car, asked the occupants for I.D. and then released them. The occupants of the vehicle were Lougin, his friend Terry Ellison, Theodore Wheeler, and Wheeler's ex-wife, Joyce Vincent.

The car was impounded, and its owner told the police that Vincent had used the car on May 10, the date of the theft. Vincent gave a complete statement of her involvement, including information regarding where she had sold the dresses.

Vincent failed to identify Lougin when first shown a photo montage by a detective. When she was reminded of Lougin's presence in her car when it was stopped on May

20, she said Lougin looked familiar, but she indicated that she could not be sure.

Lougin testified that he was not involved in the theft and that he had not been able to run for a year due to a leg injury. He also testified that he met Vincent for the first time on May 20, 1984, and that she visited him in jail.

Lougin's friend, Ellison, testified that Lougin and he "run around with the same crowd" and that he had never seen Vincent with or without Lougin.

Katie Softli, an elementary school secretary, testified that Lougin usually picked up his fiancee's son at 3:10. Lougin's fiancee, Bonnie Moore, testified that Lougin always picked up her son from school. She also testified that Lougin was with her for the majority of the day on May 10.

On August 1, 1984, Lougin was charged by information with theft in the first degree.

At the time of trial, Vincent, codefendant in the case, had entered a plea of guilty, but had not yet been sentenced. Vincent did not appear in court to testify until so ordered by a bench warrant. The trial court ruled that if she testified, she would be subject to complete cross examination on anything to do with the transaction or the sequelae. Vincent's attorney advised her of her Fifth Amendment rights. She said she did not intend to testify as to any of the transactions in view of the fact that it would subject her to cross examination as to everything. The trial court repeated its ruling. Lougin's counsel took exception.

In his opening arguments, defense counsel told the jury that Vincent would testify that Lougin had not been involved in the theft. The trial court instructed the jury that due to certain legal rules, Vincent would not testify, and that the nonappearance of Vincent should not be considered by them in arriving at their verdict.

During cross examination, the prosecutor asked Lougin if it was not true that he had seen Vincent "when she came up to the jail to visit [him]?" Lougin answered, "Yes, sir."

In post–trial affidavit, it was asserted that Vincent's visit had been arranged by Lougin's counsel to see if she could recognize him; she was unable to do so.

In closing argument, the prosecutor argued that it was unbelievable that Lougin did not know Vincent and that he "just happened to be in [her] car" 10 days later, because Lougin was identified by two independent witnesses and Vincent came up to visit him in jail. The defense counsel objected that the prosecutor was drawing inferences that were not supported by the facts. The trial court stated that there was no error because although Lougin could have easily had his investigator say that Vincent was brought up to jail to try to identify Lougin, he failed to do so. The jurors were instructed that if counsel argues something that is not in evidence, they are to totally disregard it.

The jury found Lougin guilty of theft in the first degree.

On October 23, 1984, Lougin moved the trial court for a new trial based upon the court's earlier denial of a motion for a mistrial following improper closing argument by the prosecutor and supported by affidavit. The trial court denied this motion. This appeal timely followed.

## SCOPE OF CROSS EXAMINATION

Lougin contends that he was deprived of his due process right to compel Vincent's testimony when the trial court ruled that if Vincent testified, she would be subject to complete cross examination on anything to do with the transaction or the sequelae. We find no error in the trial court's ruling on the scope of cross examination.

Generally, a person accused of a crime has a Sixth Amendment right to compel attendance by witnesses. U.S. Const. amend. 6; Const. art. 1, § 22 (amend. 10); former RCW 10.46.050; *State v. Kearney,* 11 Wn. App. 394, 523 P.2d 443 (1974). Opposed to this power to compel the giving of evidence stands the Fifth Amendment declaring that no person "'shall be compelled in any criminal case to be a witness against himself". *State v. Parker,* 79 Wn.2d 326,

331, 485 P.2d 60 (1971). This privilege against self–incrimination includes the right of a witness not to give incriminatory answers in any proceeding—civil or criminal, administrative or judicial, investigatory or adjudicatory. *Kastigar v. United States,* 406 U.S. 441, 32 L. Ed. 2d 212, 92 S. Ct. 1653 (1972). The federal guaranty against self–incrimination has been extended to the states. *Malloy v. Hogan,* 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964).

■ Once a witness waives her privilege and testifies as to some matters, she is then subject to cross examination on questions germane to her direct examination. *State v. Morgan,* 151 Wash. 306, 308–09, 275 P. 717 (1929). The Washington Supreme Court has stated that it would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from further inquiries about it. *State v. Gefeller,* 76 Wn.2d 449, 455, 458 P.2d 17 (1969).

Lougin relies on *Webb v. Texas,* 409 U.S. 95, 34 L. Ed. 2d 330, 93 S. Ct. 351 (1972), in arguing that the trial judge's actions violated due process because they caused an otherwise willing defense witness to decide not to take the stand. Lougin argues that, but for the trial court's ruling, Vincent would have testified. This argument is not supported by the facts. Vincent did not voluntarily come to court to testify, but appeared only when so ordered by a bench warrant. In *Webb,* the witness was willing to come to court to testify, refusing to do so only after the judge's lengthy and intimidating warning. *Webb,* 409 U.S. at 97. In addition, in *Webb,* not only did the trial judge warn the witness of his right to refuse to testify and of the necessity to tell the truth, but the judge also implied that he expected the witness to lie. The trial judge went on to assure the witness that if he lied, he would be prosecuted and probably convicted for perjury, that the sentence for that conviction would be added to his present sentence, and that the result would be to impair his chances for parole. *Webb,* 409 U.S. at 95–96. In the present case, the trial judge did not threaten perjury nor imply that

he expected the witness to lie, but instead merely informed the witness that she would be cross–examined.

Therefore, we find that the trial court correctly advised Vincent that if she testified, she would be subject to complete cross examination on all aspects of her direct testimony.

### Fifth Amendment Privilege

Lougin next argues that the trial court misinterpreted the law of the Fifth Amendment privilege in allowing Vincent to make a blanket refusal to testify on grounds that she might incriminate herself.

At the outset, we note that there is a potential issue as to whether Vincent had the right to claim the Fifth Amendment if the questioning had been confined to matters covered in her written confession. However, the question is not properly before us because it is not covered in an assignment or error and because the trial court and counsel proceeded on the assumption that she could properly claim the Fifth Amendment privilege in the manner in which she did claim it. Therefore, our decision assumes that Vincent had the right to claim the Fifth Amendment.

Once a Fifth Amendment claim is sustained, the question of the scope of immunity arises. A witness does not have the absolute right to remain silent when called to testify, as does a defendant in custody or on trial. *State v. Parker, supra* at 331; *State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984). In general, a claim of privilege may be raised only against specific questions, and not as a blanket foreclosure of testimony. *Eastham v. Arndt,* 28 Wn. App. 524, 532, 624 P.2d 1159 (1981). Furthermore, unless the question would obviously and clearly incriminate the witness, a claim of privilege against answering it must be supported by facts which, aided by "use of 'reasonable judicial imagination'", show the risk of self–incrimination. *Eastham v. Arndt, supra* at 532 (quoting *Thoresen v. Superior Court,* 11 Ariz. App. 62, 66, 461 P.2d 706 (1969)).

It is the trial court's function to determine whether silence is justified. The trial court must require the witness to answer if, based upon the particular facts of the case, it clearly appears that silence is not warranted. *Hoffman v. United States,* 341 U.S. 479, 486–87, 95 L. Ed. 1118, 71 S. Ct. 814 (1951). Such determination is "vested in the trial court to be exercised in its sound discretion under all of the circumstances then present." *State v. Parker, supra* at 332.

Lougin suggests that the proper procedure would have been to allow him to call Vincent and question her. If at any point she claimed a privilege against answering a question, the trial court could rule on her claim as it related to the specific question asked. Lougin is correct that Vincent had a right to invoke the Fifth Amendment privilege in response to specific questions and that because she was not a defendant in Lougin's trial, she had no right to decline to testify altogether. It is impossible to know what Vincent would have done if confronted with specific substantive questions. Conceivably, if properly advised as to the scope of her privilege, she could have testified on Lougin's behalf and still have avoided incriminating herself. Therefore, the trial court erred in not requiring Vincent to take the stand and then claim the privilege as to specific questions.

■ This error is of constitutional magnitude because it impacts Lougin's Sixth Amendment right to compel attendance by witnesses. The standard of review for constitutional error is whether it could be said that the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R. 3d 1065 (1967). In the present case, the key issue was identification, and Vincent could have testified regarding that issue. However, Vincent refused to appear in court until so ordered by a bench warrant. She was awaiting sentencing, and she claimed her Fifth Amendment privilege when informed that she would be subject to cross examination. She was not a willing witness, and the indications are clear that she was not going to testify to anything of substance.

These facts strongly indicate that once on the stand, Vincent, with advice of counsel available to her, would have claimed her privilege immediately. Under these circumstances, we find the trial court's error was harmless beyond a reasonable doubt.

## COMMENT BY THE PROSECUTOR

Finally, Lougin contends that the deputy prosecutor's comment in closing argument that Vincent had visited Lougin in jail was contrary to the evidence, prejudiced the jury and deprived him of a fair trial.

Counsel are prohibited from intentionally arguing facts not in evidence, but are permitted a reasonable latitude in arguing inferences from the evidence. *State v. Papado-poulos,* 34 Wn. App. 397, 401, 662 P.2d 59, *review denied,* 100 Wn.2d 1003 (1983). Furthermore, trial courts customarily instruct the jury as follows:

> Counsel's remarks, statements and arguments are intended to help you understand the evidence and apply the law. They are not evidence, however, and you should disregard any remark, statement or argument which is not supported by the evidence or the law as given to you by the court.

WPIC 1.02, in part.

In the present case, Lougin testified on cross examination that Vincent had visited him in jail. Neither defense counsel's assertion that he sent Vincent to the jail to see if she could recognize Lougin nor his supplemental affidavit were part of the evidence. The prosecutor's comment urged the jury to conclude that because Vincent had visited Lougin in jail, they must be friends. This was simply an argument based upon the evidence in the case and did not amount to misconduct.

If the trial court had found that the argument was improper, it could have given a curative instruction. The standard of review in determining whether the trial court correctly decided whether improper argument by the State denied the defendant a fair trial is the abuse of discretion standard. *State v. Hightower,* 36 Wn. App. 536, 547, 676

384

P.2d 1016 (1984); *State v. Weber,* 99 Wn.2d 158, 166, 659 P.2d 1102 (1983). Under this standard, a trial court's decision will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Because the comment complained of does not amount to prejudicial error, there was no abuse of discretion.

Accordingly, Lougin's conviction is affirmed.

WILLIAMS and COLEMAN, JJ., concur.