# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | 2013 JUN 17 AM 9: 30 |
| | ) | No. 68150-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| FRANK JOSEPH NELSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 17, 2013 |
| | ) | |

APPELWICK, J — Nelson appeals his convictions for identity theft and forgery. The trial court did not abuse its discretion in denying his motion to sever count III from counts I and II or in determining the scope of a potential witness's Fifth Amendment privilege. Nor did the deputy prosecutor improperly comment on Nelson's right to remain silent. The contentions in Nelson's statement of additional grounds for review do not warrant appellate relief. We affirm.

## FACTS

The State charged Frank Nelson with one count of second degree identity theft (count I) and two counts of forgery (counts II and III). The trial court denied Nelson's motion to sever count III from counts I and II.

Counts I and II were based on evidence that Nelson used an automatic teller machine (ATM) on January 16, 2011, to deposit checks for $447.97 and $2,000.00 into his bank account. Nelson was the payee on both checks.

The check for $447.97 was drawn on the account of Shaun O'Kinsella. O'Kinsella had originally written the check to the Everett Clinic for $47.97 and placed it in his mailbox. O'Kinsella did not know Nelson. The check for $2,000.00

was a convenience check drawn on the credit card account of Dianne McMillian. McMillian did not know Nelson and had never written him a check.

Nelson testified that Lorena Arisman had accompanied him while he made the deposit. Nelson occasionally worked as a driver and refurbisher for Arisman in her used furniture business. He claimed that Arisman told him the checks were payments from customers and that he agreed to deposit the checks for Arisman because she did not have a bank account. According to Nelson, Arisman entered his name on both checks.

Count III was based on evidence that Nelson cashed a forged check for $1,744.26 at the Marysville Money Tree branch. The Washington Department of Labor and Industries (L&I) issued a disability check in this amount on January 14, 2011 and mailed it to Curtis Winterroth. Winterroth never received the check.

On the evening of January 17, 2011 a man identifying himself as Frank Joseph Nelson appeared at the Money Tree branch to cash Winterroth's check, which was altered to designate "Frank Joseph Nelson" as the payee. Maria Angel, the teller, confirmed that the man matched the picture on Nelson's identification photo. Because Nelson had an existing account, Angel updated the information on the account. Angel then asked the man to let his cell phone ring. She called Nelson's cell phone number and confirmed that the voice on the voicemail message matched the voice of the man at her counter.

Angel's supervisor, Warren Carlton, also approved the transaction. Shortly after the man left, Carlton looked at the check again and noticed that the original payee's name had been "wash[ed]."

Several weeks after the incident neither Angel nor Carlton could positively identify Nelson on a photomontage. Angel characterized Nelson's photo as the one that was "closer to the person I had helped that night." Carlton pointed to two photos, including Nelson's, that resembled the man who cashed the check.

Using the cell phone number from Nelson's Money Tree account, Everett Police Officer Ryan Hogue called Nelson about the incident on January 31, 2011. Nelson told Hogue that he had recently lost his wallet at a grocery store and that someone must be using his identification. In one of several statements to police, Nelson denied cashing the check at Money Tree and claimed that he never used his middle name "Joseph" when cashing a check. He acknowledged, however, that the signature on the check "really, really looks like my signature."

Nelson stipulated to the admissibility of his statements to police. The State played an audio recording of one of the statements during trial.

The jury found Nelson guilty as charged, and the court imposed a standard range term of 26 months.

## DISCUSSION

I.  Motion to Sever

Nelson contends that the trial court erred in denying the defense motion to sever count III, the Money Tree incident, from counts I and II, which involved the O'Kinsella and McMillian checks.  We review the trial court's denial of a motion to sever for an abuse of discretion.  State v. Bythrow, 114 Wn.2d 713, 717, 790 P.2d 154 (1990).

The trial court must sever multiple offenses for trial if "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense."  CrR 4.4(b).  The joinder of multiple offenses may prejudice the defendant because:

> "(1) [the defendant] may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find."

Bythrow, 114 Wn.2d at 718 (quoting State v. Smith, 74 Wn.2d 744, 755, 446 P.2d 571 (1968) vacated in part, 408 U.S. 934, 92 S. Ct. 2852, 33 L. Ed. 2d 747 (1972), overruled on other grounds in State v. Gosby, 85 Wn.2d 758, 539 P.2d 680 (1975)).

The court considers the following factors to ascertain the potential for prejudice: (1) the strength of the State's evidence on each count; (2) the clarity of defenses to each count; (3) the court's instructions to the jury to consider the counts separately; and (4) the admissibility of the evidence of the other crimes even if not joined for trial. State v. Russell, 125 Wn.2d 24, 63, 882 P.2d 747 (1994). The defendant has the burden of demonstrating that the manifest prejudice of a single trial on the offenses outweighs the concern for judicial economy. Bythrow, 114 Wn.2d at 718.

The State's evidence supporting counts I and II included surveillance photos of Nelson and Arisman depositing the two forged checks. The strength of that evidence was tempered, however, because Nelson conceded that he had deposited the checks and claimed he did not know the checks were forged. Although the Money Tree employees could not positively identify Nelson in a photomontage, one of the employees testified at length about the identification procedures that she undertook before cashing Nelson's check. Among other things, the employee checked Nelson's photo identification and confirmed that the voice on Nelson's voice mail message matched the voice of the man cashing the check. As the trial court noted, the strength of the State's evidence for all of the counts was arguably "fairly comparable," reducing the possibility that the jury might base its "finding of guilt on any count on the strength of the evidence of another." Bythrow, 114 Wn.2d at 721-22.

The record also supports the trial court's determination that Nelson's defenses to each count, although different, were clear and not inconsistent. Nelson claimed that he did not know the two checks he deposited at the ATM were forged and that someone else had cashed the check at Money Tree using the identification he had recently lost. These defenses were clear, distinct, and easy to understand, and Nelson makes no showing that they were compromised by their assertion in a single trial.

Nelson claims that he would have chosen to testify only on counts I and II if the trial court had granted the motion to sever. But, a defendant's desire to testify only as to some of the counts does not require severance unless he makes a "convincing showing" that he had "important testimony to give concerning one count and a strong need to refrain from testifying about another." State v. Watkins, 53 Wn. App. 264, 270, 766 P.2d 484 (1989); see also Russell, 125 Wn.2d at 65-66. Nelson failed to demonstrate a strong need to refrain from testifying about count III. The nature of Nelson's defenses did not favor severance.

The third factor was not significant here, because the instructions directed the jury to consider each count separately and provided that the "verdict on one count should not control [the] verdict on any other count." See 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.05, at 172 (3d 2008); Bythrow, 114 Wn.2d at 723. We must presume that the jury followed those instructions. State v. Howard, 52 Wn. App. 12, 24, 756 P.2d 1324 (1988).

Finally, Nelson argues that severance was warranted because the evidence supporting counts I and II would not be admissible in a separate trial on count III. In considering this factor, the trial court commented that although the evidence might not be strictly cross admissible, there was potentially "extensive commonality and overlap" in the foundational details of the offenses.

But, even if evidence is not cross admissible, the trial court does not necessarily abuse its discretion in denying severance. Bythrow, 114 Wn.2d at 720. Nelson's trial lasted only a few days, and his defenses were clear and distinct. Under the circumstances, the jury could be "'reasonably expected to compartmentalize the evidence.'" Bythrow, 114 Wn.2d at 721 (quoting United States v. Johnson, 820 F.2d 1065, 1071 (9th Cir. 1987)) (internal quotation marks omitted).

The record supports the trial court's determination that there was little likelihood that the joinder of three offenses would prejudice Nelson. The court did not abuse its discretion in concluding that the concerns for judicial economy outweighed the potential prejudice. See Bythrow, 114 Wn.2d at 723.

II.    Comment on Prearrest Silence

Nelson contends that the deputy prosecutor violated the Fifth Amendment and article I, section 9 of the Washington Constitution by commenting on his prearrest silence. During opening statement, the deputy prosecutor summarized the expected evidence involving count III. She concluded her summary with a brief

description of Nelson's claim to Officer Hogue about losing his wallet and his expressed intention to give a statement to the officer the following day about the loss. Without objection, the deputy prosecutor then concluded her discussion of count III by adding:

> And he never did show up to make that statement with Officer Hogue. So that pretty much sums up the L&I Curtis Winterroth case, but there's two more, as you know.

The deputy prosecutor then moved on to the remaining counts. The trial court later ruled that the deputy prosecutor would not be able to elicit the suggested testimony from Officer Hogue.

The State may not comment on a defendant's Fifth Amendment right to remain silent, including a defendant's prearrest silence. State v. Gregory, 158 Wn.2d 759, 839, 147 P.3d 1201 (2006); State v. Lewis, 130 Wn.2d 700, 705, 927 P.2d 235 (1996). An impermissible comment on silence occurs when the State uses the defendant's silence "as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt." Lewis, 130 Wn.2d at 707. But, the primary concern is "whether the prosecutor manifestly intended the remarks to be a comment on that right." State v. Crane, 116 Wn.2d 315, 331, 804 P.2d 10 (1991). So long as the focus of the questioning or argument "'is not upon the exercise of the constitutional right itself,'" the inquiry or argument does not infringe upon a constitutional right. Gregory, 158 Wn.2d at 807 (quoting State v. Miller, 110 Wn. App. 283, 284, 40 P.3d 692 (2002)).

The brief reference to Nelson's failure to follow through on his expressed intention to make a statement was primarily part of the deputy prosecutor's short description of the investigative process involving count III. The comment included a brief summary of Officer Hogue's telephone call to Nelson and Nelson's explanation about his lost wallet. The deputy prosecutor made no further reference to the issue during the State's presentation of evidence and did not invite the jury to draw any negative inferences from the incident. Moreover, Nelson did not in fact refuse to talk to the police, and his statements to police were admitted at trial. See Gregory, 158 Wn.2d at 840. Viewed in context, the brief remark did not constitute an impermissible comment on Nelson's right to remain silent. See Id. (comment that defendant did not contact investigating officer for three days was not a comment on silence).

III.  Sixth Amendment Right to Compel Witness Testimony

Nelson contends that the trial court violated his Sixth Amendment right to compel witnesses by allowing Lorena Arisman's attorney to assert a "blanket" privilege on her behalf. The record fails to support this claim.

Both the Sixth Amendment and the Washington Constitution protect a defendant's right to compel the testimony of witnesses. State v. Levy, 156 Wn.2d 709, 731, 132 P.3d 1076 (2006). The valid assertion of a witness's Fifth Amendment privilege, however, "'justifies a refusal to testify despite the defendant's

Sixth Amendment rights.'" Id. (quoting United States v. Goodwin, 625 F.2d 693, 700 (5th Cir.1980)).

Generally, a witness may invoke the Fifth Amendment privilege only in response to specific questions. Levy, 156 Wn.2d at 731-32. But, "[i]f the judge has 'specialized knowledge' of the likely testimony and can determine whether the privilege is properly asserted for that witness, the judge may allow the witness to refuse to answer all questions." Id. (quoting United States v. Moore, 682 F.2d 853, 856 (9th Cir.1982)). We review the trial court's determination of the scope of the witness's privilege for an abuse of discretion. See State v. Lougin, 50 Wn. App. 376, 382, 749 P.2d 173 (1988).

Contrary to Nelson's contention, counsel for Arisman did not assert a true blanket Fifth Amendment privilege on her behalf. The State charged Arisman with several counts of identity theft and forgery under circumstances similar to those involving Nelson, although the charges did not involve the same checks. Nelson sought to compel Arisman's testimony, arguing that she could testify about her employment of Nelson in her used furniture business, her lack of a bank account, and her need to pay him by depositing customer checks into his bank account.

Arisman's counsel informed the court that he had just been appointed and had not yet reviewed the voluminous discovery in her case or the evidence in Nelson's case. For this reason, he wanted to assert the privilege on her behalf "or have her assert it" so that she would not inadvertently compromise the defenses in

-10-

her own pending case. The trial court then reviewed Nelson's proposed questions in some detail.

The court acknowledged that viewed in isolation, questions about Arisman's mere participation in the used furniture business and her employment of Nelson, her methods of payment, and her use of Nelson's bank account might seem pretty innocuous." But when combined with Nelson's claim that Arisman had given him the forged checks to cash, the mere fact that Arisman was involved in the business could support a reasonable inference that the two were working together. At the very least, Arisman's responses to the proposed questions would tend to confirm Nelson's claim that she was involved in the crime and would therefore be incriminating. On appeal, Nelson offers no meaningful argument to the contrary.

Here, the trial court carefully considered the application of Arisman's privilege to the specific questions that Nelson proposed. The court did not prohibit Nelson from calling Arisman as a witness to ask "very narrow, tailored things" that did not implicate the potentially incriminating issues related to her participation in the business. Nelson did not identify any further proposed questions and did not attempt to call Arisman to the stand. The trial court determined the scope of Arisman's privilege based on its specific knowledge of the proposed questions and Arisman's anticipated answers and did not permit Arisman's counsel to assert a blanket Fifth Amendment privilege. Nelson has failed to demonstrate any abuse of discretion.

-11-

IV.   Statement of Additional Grounds For Review

In his statement of additional grounds for review, Nelson contends that the trial court erred when it provided the audio recording of his interview with the Everett police to the jury during deliberations, but failed to include a playback device. The jury received a transcript of the edited recording while it played during the State's case, but the court did not provide the transcript during deliberations. Nelson argues that the trial court's decision deprived the jury of the defense's most persuasive exculpatory evidence.

Just before the case was submitted to the jury, the deputy prosecutor and defense counsel informed the court that the carefully edited audio recording of Nelson's police interview that was played during trial contained a reference to a stolen $2,500 check that was not part of the charge. The parties had intended to delete the reference from both the recording and the transcript. The reference was inadvertently left on the audio recording, although it was removed from the transcript.

After a lengthy discussion, the trial court decided to provide the jury with all of the trial exhibits, including the recording, but did not provide a device to play it. The court expressed concern that the recording, with its improper reference, could be played "over and over." The court stated that it would revisit the issue if the jury asked to listen to the recording. Defense counsel raised no objection to this procedure.

-12-

The trial court may, in its discretion, limit potential prejudice by controlling the jury's access to recorded exhibits. See State v. Frazier, 99 Wn.2d 180, 191, 661 P.2d 126 (1983) (trial court did not abuse its discretion in allowing defendant's recorded statement to go to the jury without playback equipment and permit playback upon request). Nelson has failed to demonstrate any abuse of discretion.

Nelson also contends that the State violated his Fourth Amendment right to a judicial determination of probable cause within 48 hours after his warrantless arrest. See County of Riverside v. McLaughlin, 500 U.S. 44, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991); CrR 3.2.1; CrRLJ 3.2.1. Because these allegations rest on matters that are outside the appellate record, we will not consider them on direct appeal. See State v. McFarland, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995).

Finally, in his opening brief, Nelson challenged the calculation of his offender score. The State conceded error. With our permission, the trial court has now resentenced Nelson based on the recalculated offender score. See RAP 7.2(e). We therefore do not address the assignment of error.

Affirmed.

_Appelwick, J._

WE CONCUR:

_Spearman, J._          _Leach, C.J._