COURT OF APPEALS DIV 1
2017 DEC 18 1:12: 14

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 76346-6-I |
| A.M.A., d.o.b. 02/04/2015, | ) ) | DIVISION ONE |
| A Minor Child. | ) ) | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) | UNPUBLISHED OPINION |
| Respondent, | ) ) | |
| v. | ) ) | |
| ANDRE J. ASH, | ) ) | |
| Appellant. | ) ) | FILED: December 18, 2017 |

LEACH, J. — Andre Ash appeals the juvenile court's order terminating his parental rights to his minor son, A.M.A. Due to his Fifth Amendment concerns, Ash refused to participate in services ordered in the dependency proceeding until his parallel criminal case resolved. He claims the juvenile court relied on this refusal to engage in services in its decision to terminate and thus improperly penalized him for invoking his Fifth Amendment right. Ash also challenges the sufficiency of the evidence to support certain trial court findings about the services offered by the Department of Social and Health Services (Department) and the barriers he faced as a result of incarceration. Because Ash never

affirmatively invoked his Fifth Amendment privilege, he cannot show a violation of any right it provides. Also, substantial evidence supports that the Department offered appropriate services and the court considered the barriers Ash experienced as an incarcerated parent. Thus, we affirm.

## FACTS

In March 2015, police arrested Ash for assaulting his son, A.M.A. When A.M.A. was five weeks old, Seattle Children's Hospital treated him for fractures of his skull, ribs, and leg. After the hospital admitted A.M.A., law enforcement placed him in protective custody. The State charged Ash with second degree assault of a child. Ash remained in the Snohomish County Jail throughout the dependency proceedings. In June 2016, after a stipulated bench trial, a judge convicted Ash of second degree assault of a child. In October 2016, the court sentenced Ash to 31 months in custody.

The Department filed a dependency petition in March 2015. A.M.A. has since remained out of home and is placed in an adoptive home. Ash agreed to an order of dependency in September 2015. The juvenile court ordered Ash to participate in a domestic violence assessment and mental health counseling during the dependency. Ash requested a delay in these services "pending [the] outcome of [his] criminal matter" due to his Fifth Amendment concerns.

Three months after Ash's conviction, Ash's attorney first contacted the Department to tell it that Ash now was interested in engaging in services. A social worker met with Ash at the jail the next day. She gave him a letter containing information about the service providers to call to schedule mental health counseling and submitted a referral for a domestic violence assessment with Sno-King Counseling. Ash claims that he believed that the social worker was going to schedule the services. The social worker, however, never told Ash that she would schedule them and was unaware that he could not make calls to schedule services from the jail.

The criminal court sentenced Ash on October 13, 2016. He was then transferred to the Washington Corrections Center in Shelton. After learning that Ash had been transferred, the Department contacted Sno-King Counseling to learn if they would travel to Shelton to conduct the domestic violence evaluation. They would not. On October 20, 2016, the Department contacted Ash's attorney about scheduling an appointment with a different provider in Shelton. His attorney did not respond until November 13, 2016. During Ash's incarceration at Snohomish and Shelton, he did not ask for help to access services.

Ash testified at the termination trial that he would not be in a position to care for A.M.A. even a year after he was released from prison. But he believed

that after his release he would be in a position to visit A.M.A. The juvenile court entered an order terminating Ash's parental rights to A.M.A. Ash appeals.

ANALYSIS

I.  Fifth Amendment Right against Self-Incrimination

Ash asserts for the first time on appeal a violation of his Fifth Amendment right against self-incrimination. Generally, a party may raise on appeal only those issues raised at the trial court.[1] But an appellant may raise an issue for the first time on appeal if it involves a manifest error affecting a constitutional right.[2] This test, however, presupposes a trial court error. This court must preview the merits of the claimed constitutional violation to determine whether the argument is likely to succeed.[3] Only if an error did occur does this court address whether the error caused actual prejudice and was therefore manifest.[4]

Ash asserts that the juvenile court penalized him for exercising his Fifth Amendment right against self-incrimination. He maintains that the court terminated his parental rights to A.M.A. based primarily on his failure to engage in court-ordered services, a consequence of the exercise of his privilege. The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution protect individuals from providing compelled testimony

---

[1] In re Det. of Brown, 154 Wn. App. 116, 121, 225 P.3d 1028 (2010).
[2] RAP 2.5(a)(3).
[3] Brown, 154 Wn. App. at 121-22.
[4] State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007).

that could incriminate them in a criminal case.[5] A person may claim the privilege in any proceeding, "civil or criminal, formal or informal, where the answers might incriminate [the questioned person] in future criminal proceedings."[6] The privilege is generally not self-executing and "'may be raised only against specific questions, and not as a blanket foreclosure of testimony.'"[7] The questioned person must therefore expressly assert it, i.e., "refuse to answer."[8] Otherwise, the individual "'will not be considered to have been "compelled" within the meaning of the Amendment.'"[9]

Ash contends that the juvenile court understood that he had invoked his Fifth Amendment right.[10] The court ordered him to complete a domestic violence

---

[5] The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself"; article I, section 9 of the Washington Constitution provides that "[n]o person shall be compelled in any criminal case to give evidence against himself."

[6] Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973).

[7] State v. Delgado, 105 Wn. App. 839, 845, 18 P.3d 1141 (2001) (quoting State v. Lougin, 50 Wn. App. 376, 381, 749 P.2d 173 (1988)).

[8] State v. Jacobsen, 95 Wn. App. 967, 972, 977 P.2d 1250 (1999) (quoting Minnesota v. Murphy, 465 U.S. 420, 427, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984)).

[9] Jacobsen, 95 Wn. App. at 972-73 (internal quotation marks omitted) (quoting Murphy, 465 U.S. at 427).

[10] Because the Department claims that Ash did not invoke his Fifth Amendment privilege, it also explains why neither exception to the rule applies. The two exceptions in which the privilege is self-executing are (1) during custodial interrogation by a state agent and (2) where the assertion of the privilege is penalized. State v. Post, 118 Wn. 2d 596, 605, 826 P.2d 172, 837 P.2d 599 (1992). But because Ash maintains that he invoked his Fifth

assessment and mental health counseling. Ash claims he did not do this because he did not want to incriminate himself. Ash cites the juvenile court's finding that "[t]he father chose not to participate in [these] services due to his Fifth Amendment concerns." Moreover, in the termination trial, Ash agreed that "[he] didn't want to agree to the services because [he] didn't want any evidence gathered from there to be used against [him] in [his] criminal trial." But Ash did not invoke his Fifth Amendment privilege by refusing to participate in court-ordered services. Failing to engage in services is not equivalent to refusing to answer a specific question asked. Because Ash did not invoke his Fifth Amendment right, no Fifth Amendment violation occurred. Because Ash has not shown any error, we do not consider his claim.

II.     Consideration of Factors under Washington's Parental Termination
Statute

A trial court may enter an order terminating parental rights when the Department has proved the elements of Washington's parental termination statute, RCW 13.34.180(1),[11] by "clear, cogent, and convincing evidence."[12]

---

Amendment right, he does not assert either exception. At oral argument, his counsel acknowledged this.

[11] The factors are as follows:
(a) That the child has been found to be a dependent child;
(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for

-6-

"This requires that the ultimate facts are shown to be 'highly probable.'"[13] Ash contests two elements, one relating to the provision of necessary services and the other relating to the effect that continuing the parent/child relationship has on the child's prospects for integration into a stable and permanent home.

A court must also make a finding of current parental unfitness before terminating parental rights to satisfy due process protections.[14] Once the court finds that the Department has proved the elements of RCW 13.34.180(1), the

---

a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future . . . ; and

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.

[12] RCW 13.34.190(1)(a)(i).

[13] In re Parental Rights to K.M.M., 186 Wn.2d 466, 478, 379 P.3d 75 (2016) (internal quotation marks omitted) (quoting In re Welfare of Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)).

[14] K.M.M., 186 Wn.2d at 479.

court may terminate parental rights if the Department also proves by a preponderance of the evidence that doing so is in the best interest of the child.[15] This court must affirm the trial court's decision to terminate parental rights if substantial evidence supports the trial court's findings of fact.[16] "Because of the highly fact-specific nature of termination proceedings, deference to the trial court is 'particularly important.'"[17]

## A. The Department Offered or Provided All Necessary Services

Ash asserts that after his conviction, the Department did not offer or provide him all necessary services required by statute.[18] The Department must prove "[t]hat the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided."[19] The Department must tailor these services to the parent's specific needs.[20] Although

---

[15] K.M.M., 186 Wn.2d at 479.

[16] K.M.M., 186 Wn.2d at 477.

[17] K.M.M., 186 Wn.2d at 477 (quoting In re Welfare of Hall, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983)).

[18] Ash does not contest that the Department made reasonable efforts to provide him with all necessary services before his bench trial.

[19] RCW 13.34.180(1)(d).

[20] See In re Dependency of D.L.B., 188 Wn. App. 905, 920, 355 P.3d 345 (2015), aff'd 186 Wn.2d 103, 376 P.3d 1099 (2016).

the Department must provide services when any reasonable possibility of success exists, the Department need not provide services that would be futile.[21]

Ash asserts that the Department did not meet its obligation to provide necessary services because it failed to engage him in services after his conviction. But the record shows that the Department tried to engage Ash in services. The social worker met with Ash in Snohomish County Jail as soon as she knew that he was interested in participating in services; she provided him the information he needed to schedule services; she submitted a referral for his domestic violence evaluation; and, after learning he was transferred to Shelton, she contacted his attorney about scheduling a domestic violence assessment with a different provider in Shelton. This substantial evidence adequately supports the trial court finding that the Department offered Ash all necessary services following his conviction.[22]

---

[21] In re Parental Rights to B.P., 186 Wn.2d 292, 322, 376 P.3d 350 (2016).

[22] Even if the Department fails to provide adequate services to a willing parent, termination of parental rights is appropriate if there is evidence in the record supporting the trial court's finding that the services would not have corrected parental deficiencies in the "foreseeable future." Hall, 99 Wn.2d at 850-51. In anticipation of the Department's argument, Ash asserts that there was a reasonable possibility that he would have completed his services within the requisite time frame. But because substantial evidence shows the Department offered or provided all necessary services, this claim is inconsequential.

   B.   *The Department Expended Reasonable Efforts To Offer or Provide Remedial Services*

Ash also claims that the Department did not make reasonable efforts to provide him the remedial services required by statute. The Department must prove "[t]hat continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider . . . whether the department or supervising agency made reasonable efforts as defined in this chapter."[23] Because Ash was incarcerated at the time of the termination ruling, the trial court had to consider the incarcerated parent factors.[24]

Ash supports this claim with three arguments. First, Ash maintains that the Department failed to engage him in services after his conviction. Ash contends that throughout the dependency, the social worker knew about his intention to engage in services after resolution of his criminal matter. He maintains that even though the social worker learned of his conviction in June 2016, she did not attempt to engage him in services until September. Although she claims she was waiting for Ash's attorney to contact her before engaging him in services, Ash believed the Department would reach out to him shortly after his trial. He claims that because dependencies and terminations are time sensitive,

---

[23] RCW 13.34.180(f).
[24] RCW 13.34.180(f); accord D.L.B., 186 Wn.2d at 116-17.

the Department acted unreasonably by waiting to receive word from his attorney before reengaging him in services.

But a dependency review hearing order entered in May 2016 stated that Ash was requesting delay in service "pending [the] outcome of [the] criminal matter." The order does not define the phrase "pending [the] outcome of [the] criminal matter." In addition, Ash's attorney directed the Department to have no contact with Ash until after his criminal matter was resolved. Thus, the Department reasonably waited for Ash's attorney to give it permission to contact Ash about engaging in services.

Ash's attorney sent an e-mail to the Department on September 12, 2016, saying that Ash was interested in starting services. The social worker met with Ash the next day at the Snohomish County Jail to discuss services. At the meeting, she provided Ash a letter describing the services he needed to schedule and discussed various agencies that she believed would travel to the jail to engage him in mental health counseling. The Department made a referral for a domestic violence assessment with Sno-King Counseling. This allowed for the assessment to occur while Ash was in jail. This evidence of the Department's efforts to engage Ash in services after his conviction adequately supports the trial court finding that the Department made reasonable efforts to provide Ash remedial services.

-11-

Second, Ash asserts that the Department failed to use reasonable efforts because it relied on him to schedule services for himself in jail despite the jail's limitations on his access to a telephone. Although the Department provided Ash a letter with numbers for him to call to obtain services, he claims he was unable to reach the service providers by telephone because he could only make outgoing calls if the recipient had an account with the jail. Ash believed that the social worker was going to have service providers come to the jail to engage him in services.

But Ash testified that the social worker did not actually tell him that she was going to schedule the services. In addition, the Department did not know until Ash testified that he had limited access to the telephone. Although the Department told Ash to contact it if he had any difficulty scheduling services, he never told the Department that he could not use the phone to call the service providers. Even though he had the ability to write to the Department, he never did so. Ash's attorney never contacted the Department about his inability to use the phone, and Ash never asked anyone in the jail for assistance about accessing services despite knowing that the jail offered services. Accordingly, substantial evidence supports the trial court finding that the Department made reasonable efforts to engage Ash in remedial services.

Third, Ash claims that the Department neglected to set up services for him after his transfer to Shelton. He contends the Department knew that he was going to be sentenced on October 13, 2016, but waited until seven days before his sentencing hearing to submit a referral for a domestic violence assessment. After the court sentenced Ash, Snohomish County transferred him to Shelton. Ash claims that after his transfer to Shelton, the Department did not attempt to locate any service providers in the area surrounding Shelton.

The trial court record contains no evidence the Department knew that Ash was going to be transferred to Shelton upon being sentenced. In addition, after the Department learned that Ash had been transferred, the Department immediately contacted Sno-King Counseling about traveling to Shelton to conduct the domestic violence evaluation. Upon learning that Sno-King Counseling would not travel to Shelton, the Department contacted Ash's attorney on October 20, 2016, about scheduling an assessment in Shelton. Ash's attorney did not respond to the Department until November 13, 2016.

Substantial evidence therefore supports the trial court's finding that "[t]he Department made all reasonable efforts in this case" to provide Ash remedial services after his stipulated bench trial in accordance with RCW 13.34.180(1)(f).

No. 76346-6-I / 14

## C. The Juvenile Court Considered Barriers Ash Experienced as a Result of Incarceration

Last, Ash claims that the juvenile court improperly faulted him for the barriers he experienced during his imprisonment. When the parent is incarcerated, a second factor a court must consider in determining whether the "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home" is "whether particular barriers existed as described in RCW 13.34.145(5)(b);[25] these barriers

---

[25] RCW 13.34.145(5)(b) reads as follows:

(b) The court's assessment of whether a parent who is incarcerated maintains a meaningful role in the child's life may include consideration of the following:

(i) The parent's expressions or acts of manifesting concern for the child, such as letters, telephone calls, visits, and other forms of communication with the child;

(ii) The parent's efforts to communicate and work with the department or supervising agency or other individuals for the purpose of complying with the service plan and repairing, maintaining, or building the parent-child relationship;

(iii) A positive response by the parent to the reasonable efforts of the department or the supervising agency;

(iv) Information provided by individuals or agencies in a reasonable position to assist the court in making this assessment, including but not limited to the parent's attorney, correctional and mental health personnel, or other individuals providing services to the parent;

(v) Limitations in the parent's access to family support programs, therapeutic services, and visiting opportunities, restrictions to telephone and mail services, inability to participate in foster care planning meetings, and difficulty accessing lawyers and participating meaningfully in court proceedings; and

(vi) Whether the continued involvement of the parent in the child's life is in the child's best interest.

-14-

include, "but [are] not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child."[26] Ash contends the juvenile court entered numerous findings that penalized him for failing to address his alleged parental deficiencies. For example, finding 2.68 states, "The father has not even minimally improved his parental deficiencies at this point. There is more than enough evidence for the statutory presumption to apply. The father has done nothing to rebut it."

As the Department argues, this finding relates to a different statutory element of the State's case, the "parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future."[27] Ash defends his argument by citing a principle of statutory interpretation that provides that a court must read statutes on the same subject together to give each effect and harmonize each with the other.[28] Accordingly, Ash asserts that the findings supporting one element inform this court about the trial court's analysis of another element.

---

[26] RCW 13.34.180(1)(f).
[27] RCW 13.34.180(1)(e).
[28] Harmon v. Dep't of Soc. & Health Servs., 134 Wn.2d 523, 542, 951 P.2d 770 (1998).

Even if we accept Ash's claim, finding 2.68 does not support his argument that the court did not consider the barriers he experienced due to incarceration. First, the finding states only the court's conclusion that Ash had not improved his parental deficiencies. It says nothing about whether the court did or did not consider the barriers Ash faced. Second, our Supreme Court has held that a finding under RCW 13.34.180(1)(f) "necessarily follows from an adequate showing" that there is little likelihood that conditions will be remedied so that children can be returned to the parent in the near future under subsection (1)(e).[29] Thus, the court's finding that the presumption in factor (1)(e) applies indicates that factor (1)(f) is satisfied, not that the court penalized Ash for the barriers he experienced during incarceration.

In addition, the juvenile court did, in fact, consider a number of barriers Ash experienced. The court considered barriers in visitation and his access to mail, telephone, and services. For example, finding 2.44 states, "The father argues he could not contact the service agencies because he had no jail phone access. However, the evidence established that he knew how to contact the Department's social worker by mail and, in fact, did so when he wanted to do so." Thus, the trial court did not fault Ash for the barriers he experienced as a result of incarceration but, rather, properly considered them as required by statute.

---

[29] In re Dependency of J.C., 130 Wn.2d 418, 427, 924 P.2d 21 (1996).

## CONCLUSION

The juvenile court did not penalize Ash for exercising his Fifth Amendment right because Ash never invoked it. Substantial evidence supports the juvenile court's findings that the Department offered or provided Ash with all necessary services and made reasonable efforts to provide him with remedial services. Substantial evidence also supports that the court adequately considered the barriers Ash experienced as a result of incarceration. We affirm.

_Leach, J._

WE CONCUR:

_Cox, J._               _Becker, J._