# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68846-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER GRANTING MOTION |
| RICKEY RAINEY, | ) | FOR RECONSIDERATION, |
| | ) | WITHDRAWING AND REPLACING |
| Appellant. | ) | OPINION |
| | ) | |

Respondent State of Washington filed a motion for reconsideration of the court's opinion filed February 24, 2014. The panel requested and received an answer to the motion from appellant pursuant to RAP 12.4(d). After due consideration, the panel has determined that the motion should be granted and that the opinion should be withdrawn and replaced with an opinion reflecting the changes noted below.

Now therefore, it is hereby

ORDERED that on page 2, the sentence reading "During the trial, the court admitted a certified copy of Rainey's driving record from the Department of Licensing, over Rainey's objection" be deleted and replaced by the sentence "During the trial, the court admitted, over Rainey's objection, a letter from a records custodian saying that Rainey's driving privilege had been suspended."

It is further

ORDERED that on page 13, the sentence reading "Consistent with the holding in Jasper, the certified copy of Rainey's driving record was testimonial hearsay" be deleted

No. 68846-4-I
Order Granting Motion for Reconsideration,
Withdrawing and Replacing Opinion

and replaced by the sentence "Consistent with the holding in <u>Jasper</u>, the document

stating that Rainey's license was suspended was testimonial hearsay."

It is further

ORDERED that the opinion filed February 24, 2014 is hereby withdrawn and

shall be replaced by an opinion reflecting said changes.

Dated this 28th day of April , 2014.

_____
Agid

_____
Becker, J.

_____
Leach, J.

2



STATE OF WASHINGTON

2014 APR 28 AM 11:43

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68846-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICKEY MITCHELL RAINEY, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 28, 2014 |
| | ) | |

VERELLEN, A.C.J. — During a hearing on Rickey Rainey's motion for a new trial, the trial court closed the courtroom, conducted an in camera review, and concluded that a witness could assert her Fifth Amendment privilege against self-incrimination. The witness did not take the stand or personally assert the privilege in open court before the in camera proceeding occurred and the trial court did not conduct a Bone-Club analysis before closing the courtroom.[1] Under the "experience and logic" test, a witness's assertion of the Fifth Amendment privilege against self-incrimination in an evidentiary hearing must occur on the witness stand in open court, unless the court has conducted a Bone-Club analysis and made suitable findings. Because that did not happen here, both Rainey's right to a public trial and the public's right to open proceedings were violated and Rainey is entitled to a new hearing on his motion for a new trial.

---

[1] State v. Bone-Club, 128 Wn.2d 254, 906 P.2d 325 (1995).

Additionally, as conceded by the State, the admission of certified copies of Rainey's driving records at trial violated his Sixth Amendment right to confrontation. Therefore, we reverse Rainey's conviction for driving while license suspended (DWLS) in the third degree and remand for a new trial on that count.

## FACTS

On May 17, 2009, Officer Chris Sylvain with the Snoqualmie Police Department observed Rickey Rainey driving Rainey's mother's truck. He also observed a female passenger in the truck. He checked Rainey's driving records and discovered that Rainey's driver's license was suspended. Officer Sylvain attempted to pull Rainey over, but Rainey led Officer Sylvain on a high speed chase back to Rainey's mother's home. When officers approached the home, the truck was parked and Fallon Mayhew, the passenger, was sitting in the front yard. Mayhew was distraught and pointed in the direction Rainey ran. She told Officer Sylvain that it was "the scariest ride of her life."[2]

The State charged Rainey by amended information with one count of attempting to elude a pursuing police vehicle and one count of DWLS in the third degree.

The State's witnesses included Officer Sylvain and two other responding police officers. Mayhew had given a sworn statement to the police but could not be located to testify at trial. Rainey did not testify. During the trial, the court admitted, over Rainey's objection, a letter from a records custodian saying that Rainey's driving privilege had been suspended. A jury convicted Rainey on both counts and returned a special verdict that he endangered one or more persons other than himself or the pursuing law enforcement officer while eluding a police vehicle.

---

[2] Report of Proceedings (RP) (Mar. 10, 2010) at 57.

Rainey obtained new defense counsel and moved for a new trial on several grounds, including that there was newly discovered evidence that he was not driving the truck. This new evidence consisted of exculpatory statements made by Mayhew to his new defense counsel. At a hearing on the motion, Rainey indicated that he intended to call Mayhew as a witness. Concerned that Mayhew's testimony might be self-incriminating, the trial court appointed an attorney to represent Mayhew.

After consulting with Mayhew, her counsel told the court that he advised her not to testify "because there is a possibility of a Fifth Amendment issue."[3] In order to make "a clear record," the trial court indicated that it would call Mayhew to the stand so that her defense counsel could ask her if she was planning to assert the privilege.[4] Before Mayhew took the stand, the State advised the court that it must first determine whether Mayhew has a Fifth Amendment privilege, and explained that such a determination usually takes place in a closed hearing. The court asked Rainey's counsel if she had any objection to that procedure. She admitted that she was not sure of the appropriate procedure, but deferred to Mayhew's attorney's decision on the matter. Without considering the Bone-Club factors on the record, the trial court closed the courtroom for an in camera review of Mayhew's right to assert the privilege.[5]

---

[3] RP (Aug. 27, 2010) at 60.

[4] Id. at 61.

[5] The Bone-Club factors are:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

" 2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

After the closed hearing, the trial court reopened the courtroom, and held that Mayhew did have a Fifth Amendment privilege and that she chose to exercise that privilege and not testify. Mayhew never took the stand or claimed the privilege herself in open court. The trial court granted the State's motion to strike Rainey's exculpatory evidence theory for a new trial and denied his other theories for a new trial.

Rainey appeals.

## DISCUSSION

### *Right to a Public Trial and Open Proceedings*

Rainey argues that Mayhew's failure to personally assert her Fifth Amendment privilege against self-incrimination in open court at a hearing on his motion for a new trial violated the public's right to open proceedings and his right to a public trial.[6] We agree, and remand for a new hearing.

The appellant bears the burden of establishing a public trial right violation.[7] Whether such a violation exists is a question of law this court reviews de novo.[8] A

---

" 3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

Bone-Club, 128 Wn.2d at 258-59 (alteration in original) (quoting Allied Daily Newspapers of Wash. v. Eikenberry, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

[6] The State argues that we should decline to reach this argument because it was raised by Rainey for the first time during oral argument. Rainey identified this issue in his opening brief but did not support it with any specific persuasive argument or citation to authority. Because the right to a public trial implicates the fundamental fairness of a criminal proceeding, we reach the merits of this argument.

[7] State v. Sublett, 176 Wn.2d 58, 75, 292 P.3d 715 (2012) (plurality opinion).

[8] State v. Momah, 167 Wn.2d 140, 147, 217 P.3d 321 (2009).

4

criminal defendant has a right to a public trial under the federal and state constitutions.[9]

The public has a complementary right to open proceedings under the federal and state

constitutions.[10] But these rights are not absolute, and a trial court may close part of a

trial to which the public trial right applies after applying the Bone-Club guidelines and

making specific findings on the record justifying a closure.[11]

To determine whether the public trial right applies, the Supreme Court in State v.

Sublett adopted an experience and logic test.[12] This test applies to the defendant's right

to a public trial and the public's right to open proceedings.[13] First, the experience prong

asks "'whether the place and process have historically been open to the press and

general public.'"[14] Next, the logic prong asks "'whether public access plays a significant

positive role in the functioning of the particular process in question.'"[15] If the answer to

---

[9] State v. Lormor, 172 Wn.2d 85, 90-91, 257 P.3d 624 (2011); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.

[10] Id. at 91; U.S. CONST. amend. I; WASH. CONST. art. I, § 10.

[11] Momah, 167 Wn.2d at 148.

[12] 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012) (plurality opinion). The lead opinion in Sublett was a plurality opinion by four justices. Justice Madsen's concurrence agreed with both the lead opinion's conclusion that not all trial proceedings closed to the public implicate the public trial right and its adoption and application of the experience and logic test. Id. at 92-94 (Madsen, C.J., concurring). Therefore, a majority of the court supports these holdings.

[13] State v. Burdette, 178 Wn. App. 183, 191-92, 313 P.3d 1235 (2013) ("the plain force of Sublett is that we use the experience and logic test to determine whether an event triggers the protections of either set of constitutional rights securing open trials")

[14] Sublett, 176 Wn.2d at 73 (quoting Press-Enter. Co. v. Superior Court, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)).

[15] Id. (quoting Press-Enter. Co., 478 U.S. at 8).

both the experience and logic prongs is yes, the public trial right attaches and the trial court must analyze the proposed closure using the Bone-Club factors.[16]

In Sublett, our Supreme Court concluded that the public trial right did not attach to an in-chambers proceeding where the trial court answered a jury question with only counsel present.[17] Under the experience prong, the lead opinion looked to CrR 6.15, which addresses jury instructions and directs that the question, answer, and objections to jury instructions be included in the record.[18] The lead opinion explained that this rule "advances and protects those interests underlying the constitutional requirements of open courts."[19] Furthermore, observing that the court rule is the only authority governing jury questions, the court concluded that a proceeding in open court to discuss the question itself and any appropriate answer has not been required historically.[20]

Moving to the logic prong, the lead opinion concluded that none of the values served by the public trial right were violated by an in-chambers review of a jury question because "[n]o witnesses are involved at this stage, no testimony is involved, and no risk of perjury exists."[21] It noted that CrR 6.15's requirement that the question, answer, and any objections be placed on the record and subject to public scrutiny and appellate review satisfied the appearance of fairness and reminded the prosecutor and judge of their responsibility because the writing becomes part of the public record.[22] The lead

---

[16] Id.
[17] Id. at 70, 77.
[18] Id. at 75-77.
[19] Id. at 77.
[20] Id.
[21] Id.
[22] Id.

opinion explained that this proceeding was not "so similar to the trial itself," and concluded that no closure or public trial right violation occurred.[23]

As a matter of first impression, Rainey argues that both experience and logic dictate that a witness must assert her Fifth Amendment privilege against self-incrimination in open court after being called to the stand. We agree.

As to the experience prong, State v. Lougin provides a clear statement of the procedure to be followed when a witness wishes to assert the Fifth Amendment privilege against self-incrimination.[24] There, Lougin planned to call a codefendant to testify that Lougin was not involved in the crime.[25] Before trial, the trial court ruled that if the codefendant testified, she would be subject to complete cross-examination on anything to do with the underlying incident.[26] Based on this ruling, the codefendant told the court that she did not intend to testify.[27]

During opening statements, Lougin's attorney told the jury that the codefendant would testify.[28] The trial court then instructed the jury that, due to certain legal rules, the codefendant would not testify and that her nonappearance should not be considered in arriving at their verdict.[29] Lougin was convicted and on appeal argued that the trial court

---

[23] Id.

[24] 50 Wn. App. 376, 749 P.2d 173 (1988).

[25] Id. at 378.

[26] Id.

[27] Id.

[28] Id.

[29] Id.

erred in allowing the codefendant to make a blanket refusal to testify.[30] This court

agreed and explained how the trial court should have proceeded:

> Lougin suggests that the proper procedure would have been to allow him to call [his codefendant] and question her. If at any point she claimed a privilege against answering a question, the trial court could rule on her claim as it related to the specific question asked. Lougin is correct that [the codefendant] had a right to invoke the Fifth Amendment privilege in response to specific questions and that because she was not a defendant in Lougin's trial, she had no right to decline to testify altogether. It is impossible to know what [his codefendant] would have done if confronted with specific substantive questions. Conceivably, if properly advised as to the scope of her privilege, she could have testified on Lougin's behalf and still have avoided incriminating herself. Therefore, the trial court erred in not requiring [the codefendant] to take the stand and then claim the privilege as to specific questions.[31]

This result is consistent with other Washington cases.[32] Therefore, our historical

experience dictates that a witness claiming the Fifth Amendment privilege against self-

incrimination in an evidentiary hearing must assert the privilege on the stand in open

court.[33]

---

[30] Id. at 379, 381.

[31] Id. at 382.

[32] See State v. Parker, 79 Wn.2d 326, 329-33, 485 P.2d 60 (1971) (witness properly asserted the privilege after he was called to the stand and answered more than 25 preliminary questions); Eastham v. Arndt, 28 Wn. App. 524, 525-26, 624 P.2d 1159 (1981) (in proceedings supplemental to a judgment, appellant claimed the privilege under oath and refused to answer questions regarding his assets); Seventh Elect Church in Israel v. Rogers, 34 Wn. App. 105, 107-08, 660 P.2d 280 (1983) (in proceedings supplemental to a judgment, appellant took the stand and claimed the privilege in response to specific questions); State v. White, 152 Wn. App. 173, 177, 215 P.3d 251 (2009) (witness immediately pleaded the Fifth Amendment after being called to testify by the State).

[33] Rainey's argument focuses on the assertion of the privilege in an evidentiary hearing and not in other contexts. Other jurisdictions have concluded, and Rainey concedes, that there are circumstances where an attorney may assert the privilege on behalf of a witness, typically when there is a hearing on written materials without formal testimony. See United States v. Judson, 322 F.2d 460 (9th Cir. 1963) (attorney retained by income taxpayers under investigation by the internal revenue service had standing to

Moreover, logic requires that the assertion of the privilege happen in open court because it implicates the values served by the public trial right. In State v. Wise, decided the same day as Sublett, our Supreme Court explained:

> A public trial is a core safeguard in our system of justice. Be it through members of the media, victims, the family or friends of a party, or passersby, the public can keep watch over the administration of justice when the courtroom is open. The open and public judicial process helps assure fair trials. It deters perjury and other misconduct by participants in a trial. It tempers biases and undue partiality. The public nature of trials is a check on the judicial system, which the public entrusts to adjudicate and render decisions of the highest import. It provides for accountability and transparency, assuring that whatever transpires in court will not be secret or unscrutinized. And openness allows the public to see, firsthand, justice done in its communities.[34]

Assertion of the privilege against self-incrimination often occurs in a trial or trial-like setting during the taking of witness testimony where the risk of perjury exists. Requiring a witness claiming the Fifth Amendment privilege to do so openly and in full view of the public subjects the witness to public scrutiny and satisfies the appearance of fairness that would be absent if the assertion could take place behind closed doors. It prevents abuse of the privilege by all participants by holding witnesses accountable for their use of the privilege while also tempering bias and partiality. Therefore, under the experience and logic test, the public trial right attaches to a witness's assertion of her Fifth Amendment privilege against self-incrimination in an evidentiary hearing.

---

invoke taxpayers' privilege against self-incrimination and to suppress as against government's subpoena, cancelled checks and bank statements which taxpayers had turned over to him at his request); In re Marcario, 2 Cal. 3d 329, 466 P.2d 679, 85 Cal. Rptr. 135 (1970) (defendant's attorney had standing to assert the privilege against self-incrimination on the defendant's behalf to restrain the enforcement of a discovery order). But, such exceptions do not alter the well established historical experience in Washington that a witness claiming the privilege in an evidentiary hearing must assert that privilege under oath in open court.

34 176 Wn.2d 1, 5-6, 288 P.3d 1113 (2012).

Here, Mayhew did not take the stand, was not sworn, and did not assert the privilege against self-incrimination in open court, as the experience and logic test requires. Rather, Mayhew's attorney told the court that she would assert the privilege and the trial court closed the courtroom without considering the Bone-Club factors on the record in open court. Therefore, both Rainey's right to a public trial and the public's right to open proceedings were violated.[35]

Having determined that Rainey's public trial rights were violated during this posttrial hearing, the next question is what remedy is appropriate. Without citation to any authority applicable to a posttrial hearing, Rainey argues that the violation of his public trial rights during this posttrial hearing was a structural error and the proper remedy is reversal of his conviction, not remand for a new public hearing.[36] We disagree. In Wise, our Supreme Court stated that "[w]here a public trial right violation occurs at a suppression hearing or some other easily separable part of a trial, remand for a public hearing may be appropriate."[37] This is consistent with United States Supreme Court authority.[38] Our Supreme Court concluded that Wise was entitled to a

_____

[35] The State argues that Mayhew's attorney properly asserted the privilege for her in open court. It cites United States v. Judson, 322 F.2d 460 (9th Cir. 1963) and Olson v. Haas, 43 Wn. App. 484, 718 P.2d 1 (1986) in support of this argument. Both cases involved an attorney's assertion of the privilege against self-incrimination on behalf of his client in response to an order for the production of documents. Because those cases do not consider the process required when a witness wishes to assert the privilege during her testimony in court, they do not require a different result.

[36] See State v. Young, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978) (courts may assume that where no authority is cited, counsel has found none after search).

[37] Wise, 176 Wn.2d at 19.

[38] See Waller v. Georgia, 467 U.S. 39, 50, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (holding that the appropriate remedy for a public trial violation was a new suppression hearing, not a new trial because "the remedy should be appropriate to the violation").

new trial because the violation occurred during voir dire and it was "impossible to speculate as to the impact of that on Wise's trial."[39] Here, the public trial violation occurred during a posttrial hearing on Rainey's motion for a new trial. A motion for a new trial is, by definition, an attempt to unwind the results of a fully completed trial. It is necessarily separate from the trial itself and could not have tainted the original trial. Because there is no risk that the courtroom closure in the posttrial hearing impacted Rainey's trial, a new trial is not necessary and remand for a new hearing on the motion for a new trial is the appropriate remedy.

### Sixth Amendment Right to Confrontation

Rainey argues, and the State concedes, that the admission of certified copies of Rainey's driving records violated his Sixth Amendment right to confrontation, as established in State v. Jasper.[40] We accept the State's concession.

We review an alleged violation of the confrontation clause de novo.[41] When a violation has occurred, we engage in a harmless error analysis under the constitutional standard.[42] Constitutional error is presumed to be prejudicial, and the State bears the burden of proving that the error was harmless.[43]

The Sixth Amendment's confrontation clause confers upon the accused the right "to be confronted with the witnesses against him."[44] In Jasper, the Washington State

---

[39] Wise, 176 Wn.2d at 19.

[40] 174 Wn.2d 96, 271 P.3d 876 (2012).

[41] Id. at 108.

[42] Id.

[43] State v. Lynch, 178 Wn.2d 487, 494, 309 P.3d 482 (2013).

[44] U.S. CONST. amend. VI.

Supreme Court considered whether certified copies of driving records were testimonial for the purposes of the confrontation clause when admitted to show that a defendant's license was suspended during a crime.[45] It held that such records are plainly affidavits, falling within the core class of testimonial statements described by the United States Supreme Court in Crawford v. Washington[46] and Melendez-Diaz v. Massachusetts[47] because they are created and used solely for establishing critical facts at trial.[48] The court also held that when evidence is admitted at trial and later held to violate the confrontation clause, the proper remedy is to remand for retrial.[49]

Here, the trial court admitted a certified copy of Rainey's driving record without affording him the opportunity to cross-examine the witness who prepared the record. The records included a document stating that, as of May 17, 2009, Rainey's driver's license was "[s]uspended in the third degree," a letter to Rainey notifying him that his license would be suspended on May 7, 2009 for failure to respond, appear, pay, or comply with a citation, and a copy of Rainey's driver's license.[50] The document stating that Rainey's license was suspended is substantially similar to the records improperly admitted in Jasper. The State concedes that the error was not harmless because no other evidence shows that Rainey's license was suspended for a reason that supports a conviction for third degree DWLS.

---

[45] Jasper, 174 Wn.2d at 104, 115.

[46] 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[47] 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).

[48] Jasper, 174 Wn.2d at 115.

[49] Id. at 120.

[50] Ex. 2.

The State's concession is well taken. Consistent with the holding in <u>Jasper</u>, the document stating that Rainey's license was suspended was testimonial hearsay. Therefore, the trial court erred in admitting the evidence, that error was not harmless, and the proper remedy is to vacate Rainey's third degree DWLS conviction and remand for a new trial on that count.

We reverse Rainey's conviction for DWLS in the third degree and remand for a new trial on that count. We affirm Rainey's conviction for attempting to elude a pursuing police vehicle, but remand for a new hearing on his motion for a new trial.

WE CONCUR:

_____

_____
Leach, J.

_____
Becker, J.