# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON,    )    No. 70168-1-I
                        )
        Respondent,     )
                        )
    v.                  )
                        )
MICHAEL JOSEPH LECLECH, )    UNPUBLISHED OPINION
                        )
        Appellant.      )    FILED: June 15, 2015
_____)

VERELLEN, A.C.J. — Michael LeClech appeals his drug court termination and conviction for delivering a controlled substance. He contends that under both the state and federal constitutions, the closed drug court staffing meetings violated his right to a public trial, the public's right to open proceedings, and his right to be present at all critical stages of the proceedings against him. In State v. Sykes, the Washington Supreme Court recently rejected the same public trial argument regarding drug court meetings.[1] His argument that he had a right to be present at the staffings also fails. LeClech had the opportunity to provide input regarding his noncompliance during the termination hearing before the court made a decision. Furthermore, his presence in the staffings would have interfered with the drug team's collaborative process. Finally, a waiver can be inferred from LeClech's silence under these circumstances. Accordingly, we affirm.

_____
[1] 182 Wn.2d 168, 339 P.3d 972 (2014).

FACTS

On August 25, 2011, the State charged Michael LeClech with delivering ecstasy, a controlled substance, to an undercover police officer. On February 28, 2012, LeClech formally entered King County's drug diversion court by signing the drug court's waiver and agreement.

The agreement expressly waives the right to a public trial: "I understand that I give up . . . [t]he right to a . . . public trial."[2] Any failure to abide by the terms of the agreement is an agreed grounds for termination from the program. The agreement also states, "I agree to sign a waiver allowing the treatment provider to release information regarding my treatment to the Court, defense counsel, prosecuting attorney, and Drug Diversion Court Services staff."[3]

LeClech participated in 19 open hearings in drug court spread over a year. He had difficulties. The drug court sanctioned LeClech for failing several urinalysis tests, submitting a diluted urine sample, forging a treatment document, and mistreating drug court team members and jail staff.

At an open hearing on January 8, 2013, the court expressly told LeClech, "I am going to set this case for staffing for next steps,[4] which can include and will include the

_____

[2] Clerk's Papers at 6.

[3] Id.

[4] As noted in Sykes, staffings are closed meetings "where the drug court judge, attorneys, and treatment professionals meet to discuss each drug court participant's progress. Following staffings, the drug court judge holds review hearings in open court, recounts the issues discussed at the staffing, receives the participant's input, and then makes a decision as to the appropriate next steps in each participant's case." Sykes, 182 Wn.2d at 170.

possibility of setting this case for termination."[5]  The court acknowledged that the

staffing was also intended "to take all this new information into account."[6]

On January 15, 2013 and February 19, 2013, the court held staffings to consider

a recommendation regarding LeClech's termination from the program.  Neither LeClech

nor the public were involved in these staffings.  The drug court heard the State's motion

to terminate LeClech in open court on March 4, 2013.  LeClech asked to remain in drug

court, but the court denied his request and terminated him for noncompliance.  The

court found LeClech guilty of delivering a controlled substance, denied his request for

an exceptional sentence, and sentenced him to confinement for 12 months plus 1 day,

followed by 12 months community custody.

LeClech appeals.

ANALYSIS

LeClech contends that the closed staffings preceding his open termination

hearing and conviction violated his state and federal rights to a public trial and open

proceedings, as well as his right to be present at all critical stages of the proceedings

against him.  We disagree.

*Right to a Public Trial and Open Proceedings*

An alleged violation of the right to a public trial presents a question of law that

this court reviews de novo.[7]  Both the Washington and United States Constitutions

guarantee the right of a criminal defendant to a public trial.[8]  "The Washington

---

[5] Report of Proceedings (RP) (Jan. 8, 2013) at 5.

[6] Id.

[7] State v. Wise, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012).

[8] Id.; WASH. CONST. art. I, § 22; U.S. CONST. amend. VI.

Constitution provides at minimum the same protection of a defendant's fair trial rights as the Sixth Amendment."[9] "Additionally, article I, section 10 of [the Washington] [C]onstitution provides that '[j]ustice in all cases shall be administered openly,' granting the public an interest in open, accessible proceedings."[10] The federal and state rights to a public trial and open proceedings turn on exactly the same analysis.[11]

When the parties briefed this appeal, our Supreme Court had not yet decided Sykes, which holds that King County drug court's practice of holding closed staffings prior to open review hearings is not a violation of the open courts provision of the Washington Constitution.[12]

Like LeClech, the defendant in Sykes petitioned to participate in drug court and waived her right to a public trial.[13] She participated in drug court for over a year before being terminated for failing to comply with the program's requirements.[14] The court used the experience and logic test to guide its analysis in that case.[15] Addressing the experience element, the court found that drug court staffings had "not historically been open to the press or the general public."[16] As for the logic prong, the court noted the

[9] State v. Bone-Club, 128 Wn.2d 254, 260, 906 P.2d 325 (1995).

[10] State v. Lormor, 172 Wn.2d 85, 91, 257 P.3d 624 (2011) (quoting Seattle Times. Co. v. Ishikawa, 97 Wn.2d 30, 36, 640 P.2d 716 (1982)).

[11] State v. Rainey, 180 Wn. App. 830, 837-38, 327 P.3d 56 (2014); see also State v. Burdette, 178 Wn. App. 183, 191-92, 313 P.3d 1235 (2013) ("[W]e use the experience and logic test to determine whether an event triggers the protections of either set of constitutional rights securing open trials.").

[12] Sykes, 182 Wn.2d 168.

[13] Id. at 170.

[14] Id.

[15] Id. at 174.

[16] Id. at 176.

4

importance of collaboration of drug court team members in differentiating adult drug courts from ordinary criminal adjudications.[17] Therefore, the court found that public access to staffings did "not play a significant positive role in adult drug court functioning."[18] The court concluded that based on adult drug courts' unique aspects of being "philosophically, functionally, and intentionally different from ordinary criminal courts," neither experience nor logic favored presumptively open staffings.[19] The court expressly noted that the practice of holding presumptively open or closed staffings was left to the discretion of individual drug courts.[20]

For the same reasons, the drug court's closed staffings here did not violate LeClech's right to a public trial or open proceedings under either the federal or state constitution. LeClech petitioned to participate in King County drug court, waived his right to a public trial, and participated in the program for over a year. Moreover, the court repeatedly told him it was using closed staffings to monitor his progress, and he never objected. The drug court's decision to hold closed staffings was a proper exercise of its discretion.

### Right to be Present

LeClech's claim that the closed staffings violated his right to be present is also without merit. "The Washington and United States Constitutions guarantee a criminal

---

[17] Id. at 178.

[18] Id.

[19] Id. at 171.

[20] Id.

defendant's 'fundamental right to be present at all critical stages of a trial.'"[21] Washington courts analyze alleged violations of a defendant's right to be present by applying federal due process jurisprudence.[22] This court reviews de novo a claimed violation of the right to be present.[23]

A defendant's right to be present at a proceeding is required "'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'"[24] However, this right is not absolute.[25] "'[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence.'"[26] Thus, the right is not triggered when a defendant's "'presence would be useless, or the benefit but a shadow.'"[27]

Here, the drug court judge expressly told LeClech, "I am going to set this case for staffing for next steps, which can include and will include the possibility of setting this case for termination."[28] The drug court team held two staffings to discuss LeClech's ongoing noncompliance and potential termination from the program. LeClech's attorney participated in both staffings. The team recommended termination, but the judge did

---

[21] State v. Schumacher, No. 69449-9-I, 2015 WL 1542526, at *5 (Wash. Ct. App. Apr. 6, 2015) (quoting State v. Irby, 170 Wn.2d 874, 880, 246 P.3d 796 (2011)); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.

[22] State v. Jones, 175 Wn. App. 87, 105, 303 P.3d 1084 (2013); Irby, 170 Wn.2d at 880.

[23] Irby, 170 Wn.2d at 880.

[24] Id. at 881 (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674 (1934)).

[25] Id.

[26] Id. (quoting Snyder, 291 U.S. at 107-08).

[27] Id. (quoting Snyder, 291 U.S. at 106-07).

[28] RP (Jan. 8, 2013) at 5.

not make any termination decision at either staffing. At the open termination hearing, the court recounted the issues discussed at the staffings and gave LeClech the opportunity to provide input regarding his noncompliance. LeClech did not contest his drug court violations, and stated that he wanted to remain in drug court. The court then made a termination decision. LeClech fails to show that his presence at the staffings would have benefited the team's collaboration, and in turn, that it would have promoted his successful recovery. Accordingly, he fails to show a violation of the right to be present.

In discussing the right to a public trial, Sykes explained that "[a]dult drug courts were explicitly designed to remove the individuals who participate in the adult drug court from ordinary adversarial proceedings because ordinary proceedings proved ineffective."[29] Because everyone shares the same goal in properly functioning adult drug courts—a participant's successful recovery and graduation from drug court— collaboration of the drug court team members is essential in promoting this goal.[30] Just as closed staffings are critical to the success of drug court in the context of public trial rights, the presence of the defendant at staffings would frustrate the collaborative purpose of drug court. In this setting, LeClech does not establish a violation of his right to be present.

Finally, LeClech's right to be present claim is also barred under RAP 2.5(a). LeClech raises the right to be present at staffings for the first time on appeal. He argues that the issue presents a manifest error affecting a constitutional right that may

---

[29] Sykes, 182 Wn.2d at 178.

[30] Id. at 175.

be raised for the first time on appeal under RAP 2.5(a)(3). Additionally, a waiver of the right to be present can be implied from conduct or inferred from silence following notice of a communication between the judge, attorneys, and treatment professionals.

Here, LeClech signed a written waiver and agreement when he entered drug court, which expressly allowed the court to share his treatment information with treatment staff, his attorney, and the prosecutor. The court further expressly told LeClech that the closed staffings were taking place. For over a year, LeClech acquiesced to these staffings, and his counsel actively participated in them. He never complained or objected until after his termination from the program and resulting conviction. Thus, a waiver can be inferred from LeClech's silence under these circumstances. And he fails to demonstrate a manifest constitutional error.

We affirm.

WE CONCUR:

COX, J.