# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 69593-2-I |
| | ) | DIVISION ONE |
| CALVIN ARTIE EAGLE, | ) ) | PUBLISHED OPINION |
| Petitioner. | ) ) ) | FILED: July 18, 2016 |

TRICKEY, J. — Calvin Artie Eagle filed this personal restraint petition challenging his convictions of one count of first degree rape of a child and two counts of second degree rape of a child. He claims that the trial court violated his federal and state constitutional rights to an open and public trial when it arraigned him on an amended information in chambers prior to trial. He also claims that his appellate counsel was constitutionally ineffective for failing to raise this claim on direct appeal.

We hold that the in-chambers arraignment on the amended information violated Eagle's right to a public trial. But, because Eagle fails to demonstrate actual and substantial prejudice from the violation to support his direct claim, and because Eagle fails to show that his appellate counsel was ineffective in failing to raise the claim on direct appeal, we conclude that Eagle is not entitled to collateral relief. Accordingly, we deny Eagle's petition.

## FACTS

In late 2009, a jury convicted Eagle of one count of first degree rape of a child and two counts of second degree rape of a child. The facts underlying these convictions are set forth in this court's prior unpublished opinion. State v. Eagle, noted at 162 Wn. App. 1008, 2011 WL 2179261. In March 2010, the trial

court sentenced Eagle to an indeterminate sentence of 216 months to life.

Eagle appealed to this court. He argued, among other things, that a conference in chambers regarding jury instructions violated his right to a public trial, his trial attorney provided ineffective assistance of counsel, and the failure to give a unanimity or Petrich[1] instruction violated his right to a unanimous jury verdict. Eagle, 2011 WL 2179261, at *1. On May 31, 2011, this court issued its opinion affirming Eagle's convictions. The Supreme Court denied Eagle's petition for review. State v. Eagle, 173 Wn.2d 1002, 271 P.3d 248 (2011). The mandate issued on December 14, 2012.

Eagle subsequently filed this personal restraint petition. He raised three claims regarding his right to a public trial. He claimed that his right to a public trial was violated when the trial court: (1) conducted voir dire of individual jurors in chambers and sealed juror questionnaires, (2) conducted a hearing in chambers regarding text messages that Eagle received during trial, and (3) arraigned Eagle on an amended information in a closed hearing in chambers. Eagle also claimed that appellate counsel was constitutionally ineffective for failing to raise these issues on direct appeal.

On September 10, 2013, this court dismissed Eagle's claim regarding voir dire and juror questionnaires. It stayed Eagle's remaining claims pending resolution of two Supreme Court cases—State v. Shearer, 181 Wn.2d 564, 334 P.3d 1078 (2014) and State v. Frawley, 181 Wn.2d 452, 334 P.3d 1022 (2014).

On August 4, 2015, this court lifted the stay and dismissed all of Eagle's claims with the exception of whether the arraignment proceeding violated Eagle's

---

[1] State v. Petrich, 101 Wn.2d 566, 683 P.2d 173 (1984).

right to a public trial, which it referred to a panel of judges for determination on the merits. At this court's request, the parties provided supplemental briefing on this issue.

## ANALYSIS

### Right to a Public Trial

Eagle argues that the trial court violated his constitutional rights to an open and public trial when it arraigned him on an amended information in chambers. We agree with Eagle that the trial court violated his right to a public trial when it conducted the in-chambers arraignment on the amended information. However, because Eagle fails to show actual and substantial prejudice from this error, we reject this claim.

Both the state and federal constitutions guarantee criminal defendants the right to a public trial.[2] U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. The Washington Constitution also guarantees the right of an open trial to the public.[3] WASH. CONST. art. I, § 10. "These related constitutional provisions 'serve complimentary and interdependent functions in assuring fairness of our judicial system,'" and "are often collectively called 'the public trial right.'" State v. Love, 183 Wn.2d 598, 605, 354 P.3d 841 (2015) (quoting State v. Bone-Club, 128 Wn.2d 254, 259, 906 P.2d 325 (1995)), cert. denied, 136 S. Ct. 1524 (2016).

"The public trial right is not absolute." State v. Wise, 176 Wn.2d 1, 9, 288

---

[2] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. CONST. amend. VI.
"In criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." WASH. CONST. art. I, § 22.

[3] "Justice in all cases shall be administered openly, and without unnecessary delay." WASH. CONST. art. I, § 10.

3

P.3d 1113 (2012). The trial court may close the courtroom so long as it "justifies the closure by conducting an on-the-record balancing of several factors, commonly referred to as the Bone-Club factors." State v. Njonge, 181 Wn.2d 546, 553, 334 P.3d 1068, cert. denied, 135 S. Ct. 880 (2014).

"A three-step framework guides our analysis in public trial cases. First, we ask whether the public trial right attaches to the proceeding at issue." Love, 183 Wn.2d at 605. Second, if the right attaches, we ask whether a closure occurred. Love, 183 Wn.2d at 605. Third, we ask whether the closure was justified. Love, 183 Wn.2d at 605. If we conclude that the right to a public trial does not apply to the proceeding at issue, we need not reach the remaining steps of the analysis. State v. Smith, 181 Wn.2d 508, 519, 334 P.3d 1049 (2014).

"[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." State v. Sublett, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). To determine whether the public trial right attaches to a particular proceeding, courts utilize the two-part "experience and logic" test. Sublett, 176 Wn.2d at 72-75. The "experience" prong of this test asks "'whether the place and process have historically been open to the press and general public.'" Sublett, 176 Wn.2d at 73 (quoting Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986) (Press II)). "The logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'" Sublett, 176 Wn.2d at 73 (quoting Press II, 478 U.S. at 8). Only if both questions are answered in the affirmative is the public trial right implicated. Sublett, 176

Wn.2d at 73. The defendant has the burden to satisfy the experience and logic test. In re Yates, 177 Wn.2d 1, 29, 296 P.3d 872 (2013).

On direct appeal, wrongful deprivation of the right to a public trial is structural error presumed to be prejudicial to the defendant. Wise, 176 Wn.2d at 13, 16. "That is because such error 'affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" Shearer, 181 Wn.2d at 572 (alteration in original) (internal quotation marks omitted) (quoting Wise, 176 Wn.2d at 13-14).

On collateral review, however, a meritorious public trial violation is not presumed prejudicial. In re Pers. Restraint of Coggin, 182 Wn.2d 115, 119-20, 340 P.3d 810 (2014). Rather, a petitioner claiming a public trial violation for the first time on collateral review must show actual and substantial prejudice. Coggin, 182 Wn.2d at 116. The one "exception" to this rule is where petitioners allege a public trial violation by way of an ineffective assistance of counsel claim. Coggin, 182 Wn.2d at 119.

Here, Eagle claims that the trial court violated his right to a public trial when it arraigned him in chambers on an amended information. We begin our analysis by examining the relevant procedural history and the particular proceeding at issue.

The State originally charged Eagle with two counts of rape of a child in the second degree. On June 27, 2008, Eagle was arraigned in open court on this information.

On February 17, 2009, the State filed the first amended information. The

first amended information charged four counts. It added two counts of first degree rape of a child and it erroneously increased the former counts of second degree rape of a child to first degree rape of a child.

Two days later, the trial court held a hearing on a defense motion to continue. At the hearing, the State asked the court to arraign Eagle on the first amended information. The court declined to do so, noting that the existing affidavit may not cover probable cause. The court indicated that if probable cause is found, then the prosecutor should "note it up for arraignment on the regular arraignment calendar."[4] The prosecutor did not do so.

At pretrial motions on December 1, 2009, Eagle moved to challenge the first amended information. He argued that, because the State never provided an amended affidavit of probable cause, it would be extremely prejudicial to allow the State to amend the charges at that time. He asked the court to refile the original information. The State conceded error, but it argued that because Eagle had notice of the amended charges, there was no prejudice. It asked the court to allow the first amended information and to arraign Eagle at that time.

During this discussion, the State noticed the errors in the first amended information. The first amended information erroneously charged four counts of rape of a child in the first degree. But the State intended for the first amended information to charge two counts of first degree rape of a child and two counts of second degree rape of a child.

The trial court agreed to permit the State to amend the charges but stated

_____

[4] Motion to Strike and Response Br. of Resp't, App. E; App. F (Report of Proceedings (RP) (Feb. 19, 2009) at 8).

that it would not arraign Eagle on an erroneous amended information. Because the State needed time to get the new information—the second amended information—prepared, the trial court elected to conduct the arraignment on the second amended information in chambers. The record reflects the following sequence of events:

[Prosecutor]: Your Honor, we need about 15 minutes to get the Information prepared.

[The Court]: We'll have the panel sitting out here ready to go so I want you to—maybe we'll meet in chambers with the court reporter and I can do the arraignment in chambers.

[Prosecutor]: Thank you, Your Honor.

(Recess taken.)

(The following proceedings were had in chambers:)

[The Court]: Mr. Eagle, I'm holding what's called a Second Amended Information in your case; have you seen a copy of that?

[Eagle]: Yes.

[The Court]: You are charged in Count I of the Second Amended Information with the crime of rape of a child in the first degree; in Count II with the crime of rape of a child in the first degree; in Count III with the crime of rape of a child in the second degree; and in Count IV with the crime of rape of a child in the second degree. Do you want me to read this to you?

[Defense Counsel]: It's not necessary, Your Honor.

[The Court]: To those charges how do you plead?

[Eagle]: Not guilty.

[The Court]: Not guilty pleas are entered.[5]

At no time did the trial court ask whether anyone objected to this

---

[5] Pers. Restraint Petition and Opening Br., App. B (RP (Dec. 1 & 2, 2009) at 39-40).

procedure. Nor did the trial court conduct a Bone-Club analysis prior to conducting the in-chambers arraignment on the second amended information.

As we stated earlier in this opinion, the first step in analyzing an alleged violation of the right to a public trial is determining whether the public trial right attaches to the proceeding at issue. Love, 183 Wn.2d at 605. And, as our Supreme Court recently stated, "[W]e must take care to define the proceeding at issue with precision because our focus is on the proceeding that actually occurred, not on the general label that might be attached to a variety of related proceedings." State v. Jones, No. 89321-7, 2016 WL 1594034, at *4 (Wash. Apr. 21, 2016).

The State characterizes the proceeding in this case as an "arraignment on a non-substantive amendment to the information."[6] In doing so, it focuses only on the differences between the first amended information and the second amended information. The State further asserts that the right to a public trial is not implicated by an arraignment on a non-substantive amendment to the information.

We disagree with the State that the proceeding that actually occurred in this case was an arraignment on a non-substantive amendment to the information. The State's focus—on the differences between the first amended information and the second amended information—is misplaced. Eagle was never arraigned on the first amended information due to the State's failure to properly file this information and note it for arraignment. Accordingly, we must look at the effect of *both* the first amended information and the second amended

---

[6] Supp. Response to Pers. Restraint Petition at 5.

information. The State acknowledged this at oral argument before this court.

As compared to the original information, the second amended information reflects substantial changes. Most significantly, the second amended information added two charges of first degree rape of a child. There can be no serious dispute that the addition of these two charges was a substantive amendment to the original information.

Accordingly, because the actual proceeding in this case was an arraignment on a substantive amendment to the information, we need not determine whether an arraignment on a *non-substantive* amendment to the information implicates the right to a public trial. Instead, we turn our focus to the particular issue before us—whether an arraignment on a substantive amendment to the information implicates the right to a public trial. It does not appear that any Washington case has addressed whether this type of proceeding implicates the defendant's public trial right. Therefore, we apply the experience and logic test.

Under the experience prong, the relevant inquiry is "'whether the place and process have historically been open to the press and general public.'" Sublett, 176 Wn.2d at 73 (quoting Press II, 478 U.S. at 8).

Arraignments have historically been performed in open court. This principle is well established. "[O]ur criminal law tradition insists on public indictment, public trial, and public imposition of sentence." Smith v. Doe, 538 U.S. 84, 98-99, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003); see also 22 C.J.S. Criminal Law § 483, at 612 (2006) ("The arraignment should be held *in open court*, at stated terms, whether regular or adjourned, of which the general public

has been advised." (emphasis added) (footnote and citation omitted)).

In Washington, the concept of public arraignments is found in case law dating back more than a century. In State v. Philip, our Supreme Court recognized that "a defendant must be arraigned before the court." 44 Wash. 615, 618, 87 P. 955 (1906) (citing Ballinger's Ann. Codes & St. § 6884); see also State v. Nelson, 39 Wash. 221, 224, 81 P. 721 (1905) ("The order of arraignment . . . was delivered to the appellant in open court.").

This principle is also found in court rules and statutes. The current Federal Rules of Criminal Procedure expressly state that "[a]n arraignment must be conducted *in open court.*" Fed. R. Crim. P. 10(a) (emphasis added). Similarly, although the current Washington Criminal Rule (CrR) 4.1(a) does not require that an arraignment occur in open court, former CrR 41(a) (2002) provided, "'Promptly after the indictment or information has been filed, the defendant shall be arraigned thereon *in open court.*'"[7] Washington's rule replaced former RCW 10.40.010,[8] which provided, "'When the indictment or information has been filed by the defendant, if he has been arrested, or as soon thereafter as he may be, shall be arraigned thereon before the court.'"

These authorities address arraignments in general and do not address the particular proceeding in this case—an arraignment on a substantive amendment to the information. But as our Supreme Court has made clear, "It is well settled that a substantial amendment of an information requires that the accused be arraigned on the amended information." State v. Hurd, 5 Wn.2d 308, 312, 105

---

[7] (Emphasis added.)
[8] Former RCW 10.40.010 (1983) (repealed by LAWS OF 1984, ch. 76 § 27).

P.2d 59 (1940). There is nothing to indicate that an arraignment on a substantive amendment to the information would not implicate these same rules, statutes, and established principles. For these reasons, we conclude that the experience prong is satisfied.

Under the logic prong, the relevant inquiry is "'whether public access plays a significant positive role in the functioning of the particular process in question.'" Sublett, 176 Wn.2d at 73 (quoting Press II, 478 U.S. at 8). "In analyzing this prong, we look to whether openness will advance the purposes of the public trial right: 'to ensure a fair trial, to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions, to encourage witnesses to come forward, and to discourage perjury.'" Jones, 2016 WL 1594034, at * 6 (quoting Sublett, 176 Wn.2d at 72).

Here, concerns relating to witnesses and perjury are not implicated. Rather, the focus is on the purposes of ensuring a fair trial and reminding the prosecutor and the court of their responsibility to Eagle and the importance of their functions. As Eagle points out, Washington does not require grand juries in making charging decisions. Instead, the power to charge by information is vested in the prosecutor's office.

Requiring public access to arraignments thus serves as an important check on the judicial system. The Supreme Court underscored the importance of this safeguard in Wise:

> A public trial is a core safeguard in our system of justice. Be it through members of the media, victims, the family or friends of a party, or passerby, the public can keep watch over the administration of justice when the courtroom is open. The open

and public judicial process helps assure fair trials. It deters perjury and other misconduct by participants in a trial. It tempers biases and undue partiality. The public nature of trials is a check on the judicial system, which the public entrusts to adjudicate and render decisions of the highest import. It provides for accountability and transparency, assuring that whatever transpires in court will not be secret or unscrutinized. And openness allows the public to see, firsthand, justice done in its communities.

176 Wn.2d at 4-6.

Public access to arraignments subjects the prosecutor to public scrutiny over charging decisions. Therefore, it serves an important role in ensuring that the prosecutor exercises his or her power judiciously and without bias. It holds these public officials accountable and keeps watch over the administration of justice. Further, there is often intense media and public interest in arraignments. Requiring public arraignments allows for these interested parties to "see, firsthand, justice done in [their] communities." Wise, 176 Wn.2d at 6. For these reasons, we conclude that the logic prong is also satisfied.

The State argues that the right to a public trial is not implicated because the "substance of the amendment had already been addressed in open court" and the reading of the information and Eagle's plea were recorded in the transcripts.[9] But the State fails to explain how this is relevant under the experience and logic test. Moreover, the fact remains that the arraignment proceeding itself was not conducted in open court.

In short, both experience and logic compel the conclusion that an arraignment on a substantive amendment to the information implicates the right to a public trial.

---

[9] Supp. Response to Pers. Restraint Petition at 7.

The next step in the analysis is to consider whether a closure occurred. "[T]he appellant must supply a record that reveals that the court took actions amounting to a closure, such as explicitly issuing an order completely closing the proceedings or moving the proceedings to chambers." State v. Gomez, 183 Wn.2d 29, 35, 347 P.3d 876 (2015). Here, the record shows that the court moved the proceedings to chambers and conducted the arraignment on the amended information there. A closure occurred.

The final step is to consider whether the closure was justified. "A closure unaccompanied by a Bone-Club analysis on the record will almost never be considered justified." Smith, 181 Wn.2d at 520. When a trial court fails to conduct a Bone-Club analysis, a reviewing court may examine the record to determine if the trial court effectively weighed the defendant's public trial right against other compelling interests. Smith, 181 Wn.2d at 520. Here, the trial court did not conduct a Bone-Club analysis on the record. Nor does the record reflect that the trial court effectively weighed Eagle's public trial right against other compelling interests. The closure was not justified.

In sum, the experience and logic test indicates that the proceeding that occurred in this case implicates the public trial right. Because there was a closure, and because the closure was not justified, we conclude that the trial court violated Eagle's right to a public trial.

The next question is whether Eagle is entitled to collateral relief. As noted earlier, a meritorious public trial violation is not presumed prejudicial on collateral review. Coggin, 182 Wn.2d at 119-120. A petitioner claiming a public trial

violation for the first time on collateral review must show actual and substantial prejudice. Coggin, 182 Wn.2d at 119-20.

Eagle fails to meet this burden. He makes no argument about how the in-chambers arraignment on the amended information caused actual and substantial prejudice. He instead appears to abandon this claim and rely solely on his ineffective assistance of counsel claim. Accordingly, we turn our attention to Eagle's second claim.

### Ineffective Assistance of Counsel

Eagle next claims that his appellate counsel was constitutionally ineffective in failing to raise the previous claim on direct appeal. He contends that he is entitled to collateral relief in the form of a new trial. We disagree.

To establish ineffective assistance of appellate counsel, a petitioner must establish that (1) counsel's performance was deficient and (2) the deficient performance actually prejudiced the defendant. In re Pers. Restraint of Morris, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012).

"'[P]erformance is deficient if it falls below an objective standard of reasonableness.'" Morris, 176 Wn.2d at 167 (alteration in original) (internal quotation marks omitted) (quoting State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011), cert. denied, 135 S. Ct. 153 (2014)). "This is a high threshold, and the petitioner 'must overcome a strong presumption that counsel's performance was reasonable.'" Morris, 176 Wn.2d at 167 (internal quotation marks omitted) (quoting Grier, 171 Wn.2d at 33). "One method of overcoming this presumption is by proving that counsel's performance was neither a legitimate trial strategy

nor a reasonable tactic." Morris, 176 Wn.2d at 167 (citing Grier, 171 Wn.2d at 33-34).

To establish prejudice, the defendant must show there is a reasonable probability that, but for the deficient performance, the outcome would have been different. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). When raising an ineffective assistance of appellate counsel claim, the petitioner must show a reasonable probability that he would have prevailed on his appeal. In re Pers. Restraint of Dalluge, 152 Wn.2d 772, 788, 100 P.3d 279 (2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

As stated earlier, "[t]he general rule is when a personal restraint petitioner alleges a constitutional violation, the petitioner must establish by a preponderance of the evidence that the constitutional error worked to his actual and substantial prejudice." Coggin, 182 Wn.2d at 119. However, in Morris, our Supreme Court "recognized an exception to this general rule and held that [it] would presume prejudice where petitioners allege a public trial right violation by way of an ineffective assistance of appellate counsel claim." Coggin, 182 Wn.2d at 119 (citing Morris, 176 Wn.2d at 166).

Thus, "[a]n anomaly exists with respect to prevailing in a personal restraint petition when one encountered an infringement on open trial rights." State v. Fort, 190 Wn. App. 202, 238, 360 P.3d 820 (2015), review denied, 185 Wn.2d 1011, 368 P.3d 171 (2016). "On the one hand, when the petitioner asserts his or

15

her public trial rights directly, the petitioner must show actual prejudice." Fort, 190 Wn. App. at 238. "On the other hand, when the petitioner asserts his or her public trial rights indirectly, by arguing counsel engaged in ineffective assistance by not asserting his or her public trial rights during an appeal, petitioner need not prove actual prejudice." Fort, 190 Wn. App. at 238. Instead, courts "presume prejudice for petitioners who allege a public trial right violation by way of an ineffective assistance of appellate counsel claim." Coggin, 182 Wn.2d at 122.

Here, as already discussed, the trial court violated Eagle's right to a public trial when it arraigned Eagle on the second amended information in chambers. Despite the State's assertion to the contrary, Eagle's appellate counsel failed to raise this claim on direct appeal.

Thus, the first question presented is whether this failure constituted deficient performance. This question "necessarily requires proving that counsel should have known to raise the public trial right issue on appeal." Morris, 176 Wn.2d at 167.

Eagle's direct appeal came before this court in 2011, prior to the Supreme Court's adoption of the experience and logic test. At that time, the controlling test was the "adversary proceedings" test, under which public trial rights applied only in adversary proceedings, including presentation of evidence, suppression hearings, and jury selection. In re Det. of Ticeson, 159 Wn. App. 374, 384, 246 P.3d 550 (2011). The right did not attach where the court resolved "'purely ministerial or legal issues that [did] not require the resolution of disputed facts.'" Ticeson, 159 Wn. App. at 384 (internal quotation marks omitted) (quoting State v.

16

Koss, 158 Wn. App. 8, 16-17, 241 P.3d 415 (2010)).

Like in Morris, at the time of Eagle's direct appeal, "appellate counsel had but to look at [the Supreme Court's] public trial jurisprudence to recognize the significance of closing a courtroom without first conducting a Bone-Club analysis." 176 Wn.2d at 167.

However, in contrast to Morris, it was not clear at the time of Eagle's direct appeal that this particular proceeding even implicated Bone-Club. In Morris, there was an existing opinion at the time of Morris's direct appeal, In re Personal Restraint of Orange, 152 Wn.2d 795, 807-08, 814, 100 P.3d 291 (2004), that "clarified, without qualification, both that Bone-Club applied to jury selection and that closure of voir dire to the public without the requisite analysis was a presumptively prejudicial error on direct appeal." 176 Wn.2d at 167.

Here, in contrast, there was no opinion existing at the time of Eagle's direct appeal that conclusively established that arraignments on substantive amendments to the information were subject to Bone-Club or that such errors were presumptively prejudicial on direct appeal. Thus, Eagle has not shown that counsel should have known to raise this public trial right issue. Eagle's failure to show deficient performance is fatal to this claim.

In any event, even if we were to assume that Eagle's appellate counsel was deficient, Eagle fails to show prejudice from his appellate counsel's failure to raise this claim on direct appeal.

Eagle relies on Orange and Morris to argue that he has established prejudice.

In <u>Orange</u>, the Supreme Court held that the trial court's closure of the courtroom during voir dire violated Orange's right to a public trial. 152 Wn.2d at 811-12. It also held that appellate counsel was ineffective for failing to raise this claim on direct appeal. 152 Wn.2d at 814. It reasoned:

> As to the remedy for the violation of Orange's public trial right, we granted the defendant in <u>Bone-Club</u> a new trial, stating that "[p]rejudice is presumed where a violation of the public trial right occurs." 128 Wn.2d at 261-62 (citing <u>State v. Marsh</u>, 126 Wash. 142, 146-47, 217 P. 705 (1923); <u>Waller v. [Georgia</u>, 467 U.S. 39, 49 n.9, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)]. Thus, had Orange's appellate counsel raised the constitutional violation on appeal, the remedy for the presumptively prejudicial error would have been, as in <u>Bone-Club</u>, remand for a new trial. Consequently, we agree with Orange that the failure of his appellate counsel to raise the issue on appeal was both deficient and prejudicial and therefore constituted ineffective assistance of counsel. The failure to raise the courtroom closure issue was not the product of "strategic" or "tactical" thinking, and it deprived Orange of the opportunity to have the constitutional error deemed per se prejudicial on direct appeal. The remedy for counsel's failure to raise on appeal the violation of Orange's public trial right is remand for a new trial.

152 Wn.2d at 814 (some internal citations omitted).

Similarly, in <u>Morris</u>, the Supreme Court held that appellate counsel's failure to raise a public trial right violation based on the judge's in-chambers questioning of 14 potential jurors constituted ineffective assistance of appellate counsel. It reasoned:

> To establish ineffective assistance of appellate counsel, a petitioner must establish (1) counsel's performance was deficient and (2) the deficient performance actually prejudiced the defendant. Here, there is little question that the second prong of this test is met. In <u>Wise</u> and [<u>State v. Paumier</u>, 176 Wn.2d 29, 288 P.3d 1126 (2012),] we clearly state that the trial court's in-chambers questioning of potential jurors is structural error. Had Morris's appellate counsel raised this issue on direct appeal, Morris would have received a new trial. No clearer prejudice could be

established.

176 Wn.2d at 166 (some internal citations omitted).

Eagle asserts that, like in Orange and Morris, the violation in this case would have been presumed prejudicial on direct appeal, and reversal would have been automatic. He therefore contends that he has established prejudice to support his ineffective assistance of appellate counsel claim.

We disagree. As we read Orange and Morris, those cases do not stand for the broad proposition that the failure to raise *any* public trial claim automatically establishes prejudice to sustain an ineffective assistance of counsel claim raised in a personal restraint petition. Rather, it is important to look at the nature of the violation and the corresponding remedy.

Both Orange and Morris involved a violation of the right to a public trial during voir dire. It is clear that the remedy for this type of violation is a new trial. And, in both Orange and Morris, this fact was essential to the court's prejudice analysis. In concluding that the failure to raise the public trial claim on direct appeal was prejudicial to the petitioners, the Supreme Court expressly relied on the fact that the petitioners would have received a new trial. Orange, 152 Wn.2d at 814; Morris, 176 Wn.2d at 166.

Neither Orange nor Morris addressed a situation where the remedy on direct appeal would have been something less than a new trial. On that basis, Orange and Morris are distinguishable. In the case before us, the public trial violation would not have resulted in a new trial if it had been raised on direct appeal.

19

Both federal and Washington courts have held that a new trial is not always required for a violation of the right to a public trial. In Waller, the United States Supreme Court held that although the defendant's right to a public trial was violated when the courtroom was closed for a suppression hearing, the defendant was not entitled to a new trial as a remedy for the violation. 467 U.S. at 48-50. Instead, noting that "the remedy should be appropriate to the violation," the Court remanded for a new suppression hearing. 467 U.S. at 50.

Our Supreme Court recognized this principle in Wise. 176 Wn.2d at 19. Citing Waller, it noted that "[w]here a public trial right violation occurs at a suppression hearing or some other easily separable part of a trial, remand for a public hearing may be appropriate." Wise, 176 Wn.2d at 19. Additionally, and more recently, our Supreme Court reiterated this principle in Njonge. It stated: "Where the error involves only the closure of a pretrial proceeding that can be repeated without any effect on the trial, a lesser remedy may be appropriate." 181 Wn.2d at 554 n.3.

We applied this principle in State v. Rainey. 180 Wn. App. 830, 843, 327 P.3d 56 (2014). Although we determined that Rainey's public trial rights were violated during a posttrial hearing on a motion for a new trial, we rejected his argument that the proper remedy for the violation was reversal of his conviction. 180 Wn. App. at 837, 843. Relying on Waller and Wise, we concluded that, because the posttrial hearing was separate from the trial itself and the violation did not taint the original trial, a new trial was not necessary. 180 Wn. App. at 843. We affirmed Rainey's conviction but remanded for a new hearing on his

motion for a new trial. 180 Wn. App. at 845.

Here, like in <u>Rainey</u>, the arraignment proceeding was separate from the trial itself and did not taint the original trial. Eagle makes no argument to the contrary. Thus, even if Eagle's appellate counsel had raised this claim on direct appeal, Eagle would not have been entitled to a new trial. At most, he would have been entitled to a new, public arraignment proceeding. For this reason, this case is distinguishable from both <u>Orange</u> and <u>Morris</u>. In contrast to those cases, Eagle is unable to establish prejudice from his appellate counsel's failure to raise the claim on direct appeal. Eagle's failure to show prejudice is also fatal to this claim.

Finally, we note that the only collateral relief that Eagle seeks is a new trial. He does not request any lesser relief, such as a new, public arraignment proceeding. Thus, even if we concluded that Eagle established a successful ineffective assistance of counsel claim, he fails to show that he is entitled to the sole relief he requests. <u>See</u> <u>In re Pers. Restraint of Snively</u>, 180 Wn.2d 28, 32, 320 P.2d 1107 (2014) (per curiam); <u>see also</u> <u>In re Det. of Reyes</u>, 184 Wn.2d 340, 348, 358 P.3d 394 (2015).

We deny the petition.

_Trickey, ACJ_

WE CONCUR:

_Spearman, J._          _Schindler, J._